# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-2224

_____

Karen Snow,            *
                          *
          Appellant,     *
                          * Appeal from the United States
    v.                     * District Court for the
                          * District of Minnesota
Ridgeview Medical Center,    *
                          *
          Appellee.      *

_____

Submitted: December 12, 1996

Filed:    October 16, 1997

_____

Before McMILLIAN and MAGILL, Circuit Judges, and WEBBER,[*] District Judge.

_____

McMILLIAN, Circuit Judge.

Karen Snow ("appellant" or "Snow") appeals from a final order entered in the United States District Court[1] for the District of Minnesota granting summary judgment

_____

[*]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

in favor of Ridgeview Medical Center ("appellee" or "RMC") on her Americans with Disabilities Act ("ADA"), Age Discrimination in Employment Act ("ADEA"), and state law claims. Snow v. Ridgeview Med. Ctr., No. 4-94-13 (D. Minn. Mar. 29, 1996) (memorandum opinion). For reversal, appellant argues that the district court erred in holding that appellant (1) was not disabled within the meaning of the ADA and the Minnesota Human Rights Act ("MHRA"); (2) was not discriminated against based upon her age; and (3) did not establish a triable dispute in respect of her state law claims for breach of contract, promissory estoppel, and breach of an implied covenant of good faith and fair dealing. For the reasons discussed below, we affirm the order of the district court.

## I. Jurisdiction

Jurisdiction was proper in the district court based upon 28 U.S.C. §§ 1331 and 1367. Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed under Rule 4(a) of the Federal Rules of Appellate Procedure.

## II. Background

The following recitation of undisputed facts is based upon the findings of the district court. Snow was employed by RMC from 1964 until she was terminated in 1992. Snow was hired as a laboratory and radiological technician. In this capacity, she performed laboratory tests, electrocardiograms, and x-rays.

In 1971, Snow underwent cervical fusion and took a six-week leave of absence because of an injury that she sustained in a non-work-related accident in 1969. She returned to work with a recommendation from her physician that she not lift without assistance. Her physician eliminated this lift restriction approximately six months to a year after her surgery.

Around 1972 or 1973, appellant was promoted to Chief Radiology Technician. Her duties in this new position included performing administrative tasks as well as the diagnostic services that she performed before her promotion. Snow held this position until April 1988, at which time she informed appellee that she was experiencing difficulty lifting as a result of the 1969 accident. Snow then consulted a physician who recommended that Snow refrain from lifting more than twenty-five (25) pounds, lifting patients, and pushing heavy equipment. In consideration of these restrictions, appellee created the position of "radiology services coordinator," to which appellant was assigned. This new position conformed with Snow's medical restrictions and involved the performance of administrative duties, as well as staff technician duties "as required." In 1989, Snow's physician recommended that Snow observe the same work restrictions that were in place in 1988. That same year, Snow began performing mammographies which took approximately one-and-a-half to two-and-a-half hours per day and suited her physical limitations.

In 1991, RMC began steps to become accredited by the American College of Radiology ("ACR"). In order for RMC to receive accreditation, all of its technologists performing mammographies had to be certified by the American Registry of Radiologic Technologists ("ARRT"). RMC informed Snow that she must become certified in order to continue performing mammographies at RMC. Snow investigated the requirements for certification but did not obtain certification prior to her termination, at least eight months later.

In 1992, RMC applied for and received accreditation, after which time appellant was no longer qualified to perform mammographies. RMC sought alternative ways to employ Snow full-time within her work restrictions and in accordance with its accreditation requirements. RMC contacted appellant's physician to determine appellant's then-current work restrictions. Her physician recommended the same lifting restriction as that recommended in 1988 and 1989. Based on this information and in light of Snow's lack of certification, RMC determined that there was not a sufficient

amount of work that Snow could perform to maintain her status as a full-time coordinator. RMC thus offered Snow an administrative position within the radiology department at one-tenth full-time status. Later, RMC determined that Snow could not be utilized and terminated her.

RMC's employee handbook provides that employees may be terminated for "just cause." It further states that RMC deals with its employees "fairly and in good faith." At the time appellant was fired, she was forty-nine years old and had worked for appellee for approximately twenty-nine years.

Appellant brought the underlying suit in federal district court alleging federal statutory claims under the ADA and the ADEA, state statutory disability and age discrimination claims under the MHRA, and state common law claims for breach of contract, promissory estoppel, and breach of an implied covenant of good faith and fair dealing. RMC moved for summary judgment on each of these claims. The district court entered judgment granting RMC's motion from which Snow now appeals.

## II. Discussion

A. Standard of Review

We review a district court's grant of summary judgment de novo, applying the same standard as the district court and examining the record in the light most favorable to the nonmovant. Lang v. Star Herald, 107 F.3d 1308, 1311 (8th Cir. 1997) (citing Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 258 (8th Cir. 1996)), cert. denied, No. 96-9275, 1997 WL 336894 (U.S. Oct . 6, 1997)). Summary judgment is appropriate if the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 586-87, 106 S. Ct. 1348, 1355-56 (1986).  Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant.  Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (Crawford).  Indeed, we have stated that "summary judgment should seldom be used in employment-discrimination cases."  Id.  Notwithstanding these considerations, summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case.  See Bialas v. Greyhound Lines, Inc., 59 F.3d 759, 762 (8th Cir. 1995) (Bialas).

 B. ADA and MHRA Disability Discrimination Claims

Snow challenges the district court's determination that she failed to establish a prima facie case with respect to her ADA and MHRA claims for disability discrimination.  Specifically, Snow argues that the district court erred in finding that she had not established that she was disabled within the meaning of the statutes.  Second, Snow maintains that she is a "qualified individual" for whom RMC failed to provide reasonable accommodation.

The ADA proscribes discrimination by an employer "against a qualified individual with a disability because of the disability of such individual."  42 U.S.C. § 12112(a).  Similarly, the MHRA creates a civil cause of action against employers who discharge an employee based on that individual's disability.  Minn. Stat. § 363.03 subd. 2(b).  The basic burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973) (McDonnell Douglas), applies to claims brought under either statute.  See, e.g., Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997) (Helfter) ("Federal courts analyze disability discrimination claims by using the burden-shifting framework established in McDonnell Douglas . . . ."); Crawford, 37 F.3d at 1341 (applying  McDonnell Douglas burden-shifting test to disability discrimination claim); Sigurdson v. Carl Bolander & Sons, Inc., 532 N.W.2d 225, 227 (Minn. 1995) (adopting McDonnell Douglas test to adjudicate cause of action

for disability discrimination); Lindgren v. Harmon Glass Co., 489 N.W.2d 804, 808 (Minn. Ct. App. 1992) (using McDonnell Douglas analysis for disability discrimination claim under the MHRA). Under this framework, a plaintiff must establish a prima facie case by showing that she (1) was "disabled" within the meaning of the statute; (2) was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. Webb v. Garelick Mfg. Co., 94 F.3d 484 (8th Cir. 1996); Price v. S-B Power Tool, 75 F.3d 362, 365 (8th Cir.), cert. denied, --- U.S. ---, 117 S. Ct. 274 (1996). Once the plaintiff has established her prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824. If the employer successfully makes this showing, the burden of production shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08, 113 S. Ct. 2742, 2747-48 (1993) (Hicks). The ultimate burden of proving unlawful discrimination always rests with the plaintiff. Id. at 507, 113 S. Ct. at 2747 (citing McDonnell Douglas, at 253, 101 S. Ct. at 1093).

The district court found that appellant failed to establish that she was disabled within the meaning of the applicable statutes. A plaintiff may prove disability by showing that she either (1) has a disability as defined under the ADA, (2) suffers from a history of such a disability, or (3) is perceived by her employer as having such a disability.[2] 42 U.S.C. § 12102(2)(A)-(C). Disability is defined as a physical or

---

[2]At summary judgment, appellant sought to prove her prima facie case by establishing that she had a physical impairment that substantially or materially limited a major life activity. On appeal, appellant argues that the evidence supports the findings that she has a disability, has a history of disability, and was perceived by RMC as having a disability. However, in concluding that Snow had failed to establish a prima facie case under the ADA, the district court relied solely on her argument that her impairment substantially limits one or more major life activities–the only theory of disability raised below. Memorandum Opinion at 9-12. The district court, thus, did

mental impairment that substantially (ADA) or materially (MHRA) limits one or more of the plaintiff's major life activities.[3] Id.; Minn. Stat. § 363.01 subd. 13. Whether an impairment substantially limits a major life activity is a threshold question. See 42 U.S.C. § 12112(a); Krauel v. Iowa Methodist Med. Ctr., 95 F.3d 674, 677 (8th Cir. 1996) ("The threshold requirement for coverage under the ADA is that the plaintiff be a 'qualified individual with a disability.'"). To "substantially limit" a major life activity means to render an individual unable to perform a basic function that the average person in the general population can perform, or to significantly restrict the condition, manner, or duration under which an individual can perform a particular major life activity as compared to an average person in the general population. 29 C.F.R. Pt. 1630, App. § 1630.2(j). "The inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working." Id. § 1630.2(i). Rather, the impairment must prevent the appellant from performing an entire class or broad range of jobs as compared to the average person possessing comparable training, skills, and abilities. Aucutt v. Six Flags Over Mid Am., Inc., 85 F.3d 1311, 1319 (8th Cir. 1996) (Aucutt) (citing 29 C.F.R. § 1630.2(j)(3)(i)). Finally, the following factors are considered in determining whether a person is substantially limited in a major life

---

 not have an opportunity to consider at summary judgment, appellant's arguments with respect to the alternative theories of disability under 42 U.S.C. § 12102(2)(A)-(C). Appellant is therefore precluded from arguing either that she had a history of disability or was perceived by RMC as having a disability. O.R.S. Distilling Co. v. Brown-Forman Corp., 972 F.2d 924, 926 (8th Cir. 1992) ("[A] party may not assert new arguments on appeal of a motion for summary judgment."); see also Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 734 (8th Cir. 1993); Felton v. Fayette Sch. Dist., 875 F.2d 191, 192 (8th Cir. 1989).

[3]Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Sitting, standing, lifting, and reaching are also considered major life activities. Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997) (citing 29 C.F.R. § 1630.2(i)).

activity: (1) the nature and severity of the impairment, (2) its duration or anticipated duration, and (3) its long- term impact. Id.

Appellant maintains that her physical impairment "affects such activities as performing manual tasks, hearing,[4] lifting, and working." (Appellant's Brief at 14-15). The undisputed facts show that appellant sustained an injury in 1969 to her neck and spine for which her physician has imposed a lifting restriction since 1988. While lifting is noted under the regulations as a major life activity, a general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability within the meaning of the ADA. See, e.g., Helfter,115 F.3d at 617 (evidence that impairment limits work-related activities such as lifting does not demonstrate triable dispute regarding substantial limitation on major life activity); Aucutt, 85 F.3d at 1319 (twenty-five pound lifting restriction, without more, does not constitute a significant restriction on ability to perform major life activities). Likewise, Snow's assertion that her ability to perform manual tasks and work is so impaired that it constitutes a disability is unconvincing where there is no evidence that she is thereby precluded from performing a class or broad range of jobs as compared to average persons in the general population. Helfter, 115 F.3d at 617; Aucutt , 85 F.3d at 1319. Indeed, appellant has presented no evidence from which to reasonably infer that any of the major life activities enumerated in 29 C.F.R. § 1630.2(i) is substantially or materially limited by her physical impairment. It is not enough that an impairment affect a major life activity; the plaintiff must proffer evidence from which a reasonable inference can be drawn that such activity is substantially or materially limited. E.g., Helfter, 115 F.3d at 616 (conclusory testimony regarding the limitation an impairment places on a major life activity standing alone is insufficient to defeat motion for summary judgment on a

---

[4]Appellant belatedly argues that she has a hearing impairment which constitutes a disability under the ADA and the MHRA. Having not been raised in appellant's memoranda opposing summary judgment, this argument has no place before this court on appeal. See supra note 2; see also Memorandum Opinion at 9 n. 4.

disability discrimination claim). The facts as determined by the district court and presented in the parties' briefs on appeal do not support such an inference. Accordingly, we agree with the district court that there is no genuine issue of material fact regarding Snow's assertion of a disability within the meaning of the ADA or the MHRA.[5]

C. ADEA and MHRA Age Discrimination Claims

Snow next argues that the district court erred by granting summary judgment on her age discrimination claims brought under the ADEA and the MHRA. Both the ADEA and the MRHA prohibit an employer from discharging an employee within a protected age group (40 years old and over) because of that employee's age. 29 U.S.C. §§ 623(a)(1), 631(a); Minn. Stat. § 363.03 subd. 1(2)(b). Moreover, like appellant's disability claim, her age discrimination claims under both statutes are governed by the McDonnell Douglas burden-shifting framework. Bevan v. Honeywell, Inc., 118 F.3d 603, 613 (8th Cir. 1997) (Bevan) (citing Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1338-39 (8th Cir. 1996); Feges v. Perkins Restaurants, Inc., 483 N.W.2d 701, 710 (Minn. 1992)).

Snow asserts that she established a prima facie case for age discrimination by showing that (1) she was forty-nine years old when terminated, and thus, a member of the protected group; (2) she performed competently and satisfactorily for over 28 years, indicating that she was a qualified individual within the meaning of the statute; and (3) after her termination, the number of employees in her department increased from 16 to 20 and her duties were assigned to other employees. RMC relied on Snow's lack of certification as its nondiscriminatory reason for her termination. On the ultimate issue of intentional age discrimination, Snow alleged that she was terminated because

---

[5]The analysis of disability under both statutes is interchangeable. E.g., Heintzelman v. Runyon, 120 F.3d 143, 145 n.4 (8th Cir. 1997).

she was the "senior most employee [at RMC], making good money." (Snow Depo. at 81). In essence, Snow argues that she was terminated because she had been employed at RMC longer than the other then-current employees, and thus earned a comparatively higher salary. The district court granted RMC summary judgment in light of the Supreme Court's holding in Hazen Paper v. Biggins, 507 U.S. 604, 113 S. Ct. 1701 (1993) (Hazen Paper), and the precedent in this circuit. See Hanebrink v. Brown Shoe Co., 110 F.3d 644, 647 (8th Cir. 1997) (Hanebrink); Slathar v. Sather Trucking Corp., 78 F.3d 415, 418 (8th Cir.), cert. denied, --- U.S. ---, 117 S. Ct. 179 (1996); Bialas, 59 F.3d at 763.

In Hazen Paper, the Court held that "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employer's age." Id. at 1705. The plaintiff in Hazen Paper alleged discrimination on the ground that his employer fired him because his pension was close to vesting. Id. The Court held that firing an employee on this basis is not actionable under the ADEA. The Court reasoned that, "because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age-based.'" Id. at 1707. Under Hazen Paper, the evidence in the instant case is insufficient, as a matter of law, to show that Snow's termination was based upon her age. Id. at 1707; see also Hanebrink, 110 F.3d at 647 ("Employment decisions motivated by characteristics other than age such as salary and pension benefits, even when such characteristics correlate with age, do not constitute age discrimination.").

While we agree with the district court's conclusion that RMC is entitled to summary judgment on Snow's age discrimination claims under Hazen Paper, we also note that a plaintiff may, in some instances, prove intentional discrimination by relying on the evidence proffered to establish his or her prima facie case under the burden-shifting method. See Hicks, 509 U.S. at 511, 113 S. C t. at 2749 ("[T]he factfinder's disbelief of the reasons put forward by the defendant . . . *may*, together with the

-10-

elements of the prima facie case, suffice to show intentional discrimination.") (emphasis added). However, appellant has failed to proffer any competent evidence (direct or indirect) of age discrimination beyond that which is intended to support her prima facie case, and the evidence proffered in support of Snow's prima facie case is not sufficient to create a genuine dispute regarding intentional age discrimination. We therefore agree with the district court that RMC was entitled to summary judgment on appellant's ADEA and MHRA claims.[6]

D. Breach of Contract Claims

Snow asserts that her termination was in breach of a contractual agreement contained in RMC's employee handbook. RMC's employee handbook provides that employees may be terminated for "just cause" and that RMC deals with its employees "fairly and in good faith." Pursuant to Minnesota law, an employee handbook may form an enforceable agreement if the requisites for a unilateral contract have been met. Pine River State Bank v. Mettille, 333 N.W.2d 622, 627 (Minn. 1983) (Mettille). Moreover, while there is no implied covenant of good faith and fair dealing in employment contracts under Minnesota law, we have held that "the same specificity required to modify the at-will relationship" may also create an *express* covenant of good faith and fair dealing. Poff v. Western Nat'l Ins. Co., 13 F.3d 1189, 1191 (8th Cir. 1994) (emphasis added). Absent an express contract, however, there is a presumption of at-will employment. Mettille, 333 N.W.2d at 627. An at-will employee may be terminated at any time for no reason at all. Id.

---

[6]If appellant cannot establish that she was discriminated against under the ADEA, she likewise has no claim for age discrimination under the MHRA. See Bevan v. Honeywell, Inc., 118 F.3d 603, 613 (8th Cir. 1997) ("[W]e review the MHRA claim under the same standards as we applied to the ADEA claim.").

We agree with the district court that appellant was an at-will employee.  The language cited above from the RMC employee handbook lacks the specificity and definiteness required of a unilateral contract.  See, e.g., Hunt v. IBM Mid Am. Fed. Employees Credit Union, 384 N.W.2d 853, 856-57 (Minn. 1986).  Accordingly, appellant's status as an at-will employee was not modified by the employee handbook nor did the handbook create an express convenant of good faith and fair dealing.  We agree therefore with the district court that RMC is entitled to summary judgment on appellant's breach of contract claims.

E. Promissory Estoppel

Finally, appellant claims that as early as 1988, managing personnel at RMC told her that she would "always have a position with Ridgeview Hospital," thereby creating a promise upon which she detrimentally relied.  In addition, appellant maintains that the language in the employee handbook created a promise that she would not be terminated without just cause.  This latter argument is moot for the same reason that it could not support a claim for breach of contract.  Moreover, we agree with the district court that appellant failed to demonstrate a genuine issue as to essential elements of her promissory estoppel claim.

In order to assert a claim for promissory estoppel, a plaintiff must establish each of the following elements: (1) a promise, (2) detrimental reliance, and (3) injustice.  Ruud v. Great Plains Supply, Inc., 526 N.W.2d 369, 372 (Minn. 1995).  The law is hesitant to impose on an employer the burdensome obligation of providing permanent employment in the absence of an explicit promise to that effect.  See Degen v. IDS, Inc., 260 Minn. 424, 428-29, 110 N.W.2d 863, 866- 67 (1963).  Moreover, the promise must be of the kind to reasonably induce forbearance.  Grouse v. Group Health Plan, 306 N.W.2d 114, 116 (Minn. 1981).

The district court held that Snow failed to establish that she detrimentally relied on RMC's promise. After carefully reviewing the record in this case, we agree. On appeal, Snow fails to present any evidence of her reliance except her assertion that she stayed at RMC for twenty-nine years and did not seek other employment or additional certification in her field in reliance on RMC's "promises." The statements allegedly made by RMC managers, upon which Snow relies could not reasonably induce such reliance when Snow was subsequently informed by RMC that she would need to seek certification in order to maintain her status as a full-time employee at RMC. Accordingly, we agree with the district court that RMC has entitled to summary judgment on this claim.

### III. Conclusion

For the reasons stated in this opinion, we affirm the district court's grant of summary judgment on appellant's ADA, ADEA, and state law claims. In addition, appellee's motion to strike portions of appellant's brief and appendix is hereby denied as moot.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.