**Miguel VELEZ DEL VALLE,**
**Plaintiff,**

v.

**Mobile PAINTS, et al. Defendant**

**No. CIV. 02–2111JP.**

United States District Court,
D. Puerto Rico.

Nov. 17, 2004.

221

José M. Casanova–Edelman, Esq., San Juan, PR, for Plaintiff.

José F. Benítez–Mier, Esq., O'Neill & Borges, San Juan, PR, for Defendant.

## *OPINION AND ORDER*

PIERAS, District Judge.

### I. INTRODUCTION

Before the Court is Defendants' "Motion for Summary Judgment and Memorandum of Law in Support Thereof" (**docket No. 19**) Plaintiff's opposition thereto (docket No. 43) and Defendants' reply to Plaintiff's opposition (docket No. 46). This case arises out of Plaintiff Miguel Vélez del Valle's claims against his former employer, Defendant Mobile Paints, for discrimination on the basis of disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101—12771, and Puerto Rico law. For the reasons herein stated, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment and **DISMISSES** this case **WITH PREJUDICE.**

### II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where, after drawing all reasonable inferences in favor of the

non-moving party, there is no genuine issue of material fact for trial. *See Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993). A fact is material if it might affect the outcome of the case. *Mack v. Great Atl. and Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989). An issue is "genuine" if sufficient evidence exists to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989).

 The party filing a motion for summary judgment bears the initial burden of proof to show "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to show affirmatively, through the filing of supporting affidavits or otherwise, that a genuine issue exists for trial. *See Goldman v. First National Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993). In discharging this burden, the non-moving party may not rest upon mere allegations or denials of the pleadings. See Fed.R.Civ.P. 56(e). On issues where the non-moving party bears the ultimate burden of proof, it must present definite, competent evidence to rebut the evidence put forth by the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–257, 106 S.Ct. 2505, 2514–2515, 91 L.Ed.2d 202 (1986). Indeed, summary judgment may be appropriate "... where elusive concepts such as motive or intent are at issue ... if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 259 (1st Cir.1994).

### III. FINDINGS OF FACT

After thoroughly evaluating the facts presented by the parties and the record as a whole, the Court makes the following findings of fact.

1. Mobile Paints Mfg. Co. of Puerto Rico ("Mobile Paints") is a corporation dedicated to the manufacturing and sale of paints and related products.

2. Plaintiff Miguel Vélez del Valle commenced his employment with Mobile Paints on January 4, 2000.

3. Plaintiff's initial wage was $6.00 per hour.

4. Plaintiff was originally hired as a Shader.

5. After approving his probationary employment period, Plaintiff was assigned to the Shader Trainer position and given a wage increase.

6. Plaintiff was assigned to Mobile Paints' store in Puerto Nuevo, Puerto Rico (the "CDC").

7. On or about May 20, 2000, while allegedly wearing the security belt provided by Mobile Paints, Plaintiff suffered a back injury while carrying paint containers.

8. On May 23, 2000, Plaintiff reported to Puerto Rico's State Insurance Fund ("SIF") for treatment and was submitted to medical tests.

9. The medical tests at the SIF revealed that Plaintiff had suffered a "very small (practically nominal) centrally located disc herniation L4–L5".

10. The tests also revealed that straightening of the lumbar curvature could be related to a muscular spasm.

11. The SIF diagnosed a lumbo-sacral sprain.

12. On June 23, 2000, the SIF determined that Plaintiff could continue working while receiving treatment.

13. On June 26, 2000, Plaintiff was reinstated in his employment and transferred to a Customer Service Representative position.

14. As a Customer Service Representative, Plaintiff would be responsible for attending the store's customers, preparing purchase orders and charging clients for their purchases.

15. Plaintiff was able to perform all of the duties of that position that did not require the lifting and carrying of heavy objects.

16. Elba Hernández, Mobile's Sales Director, instructed Dennis Aponte, Plaintiff's supervisor, that Plaintiff would not carry heavy objects.

17. Plaintiff never submitted any requests for reasonable accommodation or any medical or other documentation to establish that reasonable accommodation was needed.

18. On June 26, 2000, Plaintiff was transferred to Mobile Paints' store in Carolina for training in his new CSR position.

19. Plaintiff was transferred back to the Puerto Nuevo CDC store after finalizing his training.

20. Plaintiff did not object to this transfer.

21. On August 30, 2000, the SIF released Plaintiff from treatment.

22. For SIF's purposes, it determined that Plaintiff had healed with a 10% percentage of disability.

23. Plaintiff has not received medical treatment for his alleged back condition since August of 2000.

24. During his tenure at Mobile, Plaintiff did not submit any medical certificate indicating the need for or requesting any type of accommodation.

25. After being released from treatment, Mobile Paints provided Plaintiff various types of seminars and training related to his CSR position.

26. In December 2000, Aponte gave Plaintiff a written warning for using an outdated price list to sell Mobile paints products at lower prices than the listed prices.

27. Plaintiff did not challenge the aforementioned disciplinary measure.

28. On January 6, 2001, Plaintiff received a written warning for entering an incorrect date on a purchase order in violation of company established procedure.

29. On January 9, 2001, Plaintiff was given a second written warning for entering the wrong date in another sales order in violation of the same company established procedure.

30. Plaintiff did not challenge this disciplinary memorandum.

31. Plaintiff stipulates to the authenticity of the written warning of January 9, 2001, but not to its contents.

32. On March 21, 2001, Plaintiff was disciplined for failing to invoice and charge a client for a product.

33. Plaintiff did not challenge the aforementioned disciplinary measure.

34. On April 16, 2001, Plaintiff was not allowed to work for reporting to work without his uniform and in an inappropriate and unprofessional appearance.

35. On April 19, 2001, a client reported another incident in which Plaintiff negligently completed a sales order

and incorrectly applied credit to an incorrect unrelated client.

36. Plaintiff does not stipulate the memorandum dated April 19, 2001 because he alleges he never saw or received a copy of this memorandum.

37. On May 4, 2001, $120.28 was missing from the cash register assigned to Plaintiff.

38. On May 8, 2001, Hernández disciplined Plaintiff and another employee (Rafael Lozada) in writing because his cash register was short $120.28 and asked each one to return half of the missing money.

39. On May 9, 2001, Plaintiff reported he had a headache and was allowed to go home.

40. On that same day, Plaintiff visited the Puerto Rico Department of Labor's Anti–Discrimination Unit and presented a charge alleging disability discrimination.

41. On May 10, 2001, Plaintiff was again admonished for entering incorrect dates in his purchase orders and for not verifying his purchase orders.

42. The aforementioned incident was Plaintiff's third disciplinary measure for the same violation.

43. On May 14, 2001, Plaintiff was absent from work without authorization.

44. Plaintiff did not call his supervisor, Aponte, to notify him that he would be absent.

45. On May 15, 2001, Plaintiff sent Hernández a letter complaining about Aponte's managerial skills.

46. Plaintiff stipulates the authenticity and contents of the May 15, 2001 letter.

47. On May 16, 2001, Hernández notified Plaintiff and three (3) other Puerto Nuevo store employees that Plaintiff would have to report to Mobile Paints' Carolina store from May 17 to 25, 2001 for retraining and evaluation.

48. On May 23, 2001, Plaintiff was again admonished in writing for failing to deliver and/or charge a client for a product.

49. Plaintiff did not challenge this disciplinary measure.

50. On May 25, 2001, Mr. William Vera, Mobile Paints' Operations Manager, disciplined Plaintiff for incorrectly completing a purchase order.

51. In this instance, Plaintiff altered the billing and shipping addresses in a sales invoice ("conduce").

52. When Mr. Vera discovered the omission, he asked Plaintiff to correct it.

53. Mr. Vera instructed Plaintiff to expedite the correction since the truck that would make the delivery was waiting outside.

54. Plaintiff instead told Vera to put the order on his desk and that he would take care of it later when he finished what he was working on.

55. Vera then took the order and corrected it himself to avoid further delay in the departure of the delivery truck.

56. Plaintiff was terminated on May 28, 2001 as result of the incidents narrated above.

57. Plaintiff admits he was never disciplined for any reason related to his alleged back pain.

58. The Anti–Discrimination Unit notified Mobile of Plaintiff's charges on July 11, 2001.

59. On November of 2001, Plaintiff commenced working as an outside salesman for a hardware store.

60. As a salesman, Plaintiff drove close to eight (8) hours on a daily basis.

61. Plaintiff can perform his salesman duties without any type of accommodation.

62. Concurrently with his employment at Mobile Paints, Plaintiff also worked as a vacuum cleaner salesperson for the Rainbow Company (5:00 p.m. to 9:00 p.m.) in the Plaza Las Américas Shopping Center, and also worked doing promotions for a perfume company located at the Plaza Las Américas Shopping Center.

63. Plaintiff also presented a retaliation charge before the Equal Employment Opportunity Commission on March 14, 2002.

64. The EEOC issued a "Dismissal and Notice of Rights" letter indicating that it had been unable to conclude that the information obtained establishes a violation of the statutes.

## IV. CONCLUSIONS OF LAW

At the outset, the Court addresses several issues. First, the fact that Plaintiff filed two *different* oppositions to Defendant's motion for summary judgment. Second, that Plaintiff failed to file a proper opposition to Defendants' Motion for Summary Judgment because he failed to contest the facts proffered by Defendant, a requisite under Local Rule 56.

■ Regarding the two different oppositions, during a conference in chambers on June 24, 2004, the Court asked the parties to submit a supplemental memorandum of law regarding the specific issue of what constituted a covered disability pursuant to recent Supreme Court jurisprudence. Although both parties complied, Plaintiff titled his memorandum "Opposition to Motion Requesting Summary Judgment", the same title of his original opposition to Defendant's motion for summary judgment, and further, included therein supplemental materials and arguments not included in the original opposition. The Court was very clear in what it wished the parties to brief: what constituted a covered disability under the ADA.

Because Plaintiff's "second memorandum", for the sake of clarity, was filed outside the time frame to oppose Defendants' motion for summary judgment, and because it includes arguments not originally set forth in Plaintiff's opposition, the Court shall **ONLY** consider whatever arguments are therein included pertaining to a covered disability under the ADA, as it originally instructed the parties. Any new arguments and documents in the second memorandum that were not previously submitted to the Court on summary judgment **SHALL NOT** be considered.

■ Regarding the second issue, because Defendants' uncontested facts were not properly opposed pursuant to Local Rule 56, the uncontested facts supplied by Defendants in their statement (docket No. 19) are deemed uncontested and are admitted as true. *See Local Rule 56(c); Tavárez v. Champion Products, Inc.*, 903 F.Supp. 268 (D.Puerto Rico 1995); *Cosme–Rosado v. Serrano–Rodríguez*, 360 F.3d 42 (D. Puerto Rico 2004). With this in mind, the Court makes the following conclusions of law.

### A. Americans with Disabilities Act

■ The Americans with Disabilities Act ("ADA") prohibits employment dis-

crimination against qualified individuals with disabilities who can perform the essential functions of a job with or without reasonable accommodation. *See* 42 U.S.C. § 12112(a). The ADA's mandate extends to all job aspects, including job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. *See id.*

■■■■ To establish a claim of disability discrimination under the ADA, a plaintiff must prove (1) that he or she is "disabled"[1] within the meaning of the ADA; (2) that with or without reasonable accommodation, he or she could perform the essential functions of the job; and (3) that the employer took an adverse employment action with respect to the plaintiff in whole or in part because of the disability. *See Jacques v. Clean–Up Group, Inc.,* 96 F.3d 506, 511 (1st Cir.1996). A plaintiff may also indirectly prove his or her case "by using the prima facie case and burden shifting methods that originated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Katz v. City Metal Co., Inc.,* 87 F.3d 26, 30 n. 2 (1st Cir.1996) (citations omitted); *see also EEOC v. Amego, Inc.,* 110 F.3d 135, 145 n. 7 (1st Cir.1997) (recognizing that "the ADA is interpreted in a manner similar to Title VII").

## B. Disability

Defendants move for the summary dismissal of the Complaint on the grounds that Plaintiff has failed to demonstrate that he is disabled within the meaning of the ADA. Defendants contend that Plaintiff's handicap of ten percent (10%) disability by the State Insurance Fund does not mean that he is automatically disabled

within the meaning of the statute, that this impediment does not substantially limit a major life activity and, consequently, Plaintiff has failed to set forth a prima facie case of discrimination under the ADA.

■■■■ As previously stated, in order to succeed, Plaintiff must first establish that he is disabled. The ADA states that an individual is "disabled" when he (A) has a physical or mental impairment which substantially limits one or more of an individual's major life activities; (B) has a record of such an impairment; or (C) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). In *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), the Supreme Court set forth a three-part test for analyzing whether a plaintiff suffers from a disability within the meaning of subsection 12102(2)(A) of the ADA. The first step is to determine whether the plaintiff has a physical or mental impairment. *See id.* at 2202. Second, the life activity upon which the plaintiff relies is identified, and it is determined whether it constitutes a major life activity under the ADA. *See id.* Finally, the Court inquires whether the plaintiff's impairment substantially limits the major life activity previously identified. *See id.*

### i. Impairment

■■■■ The Equal Employment Opportunity Commission regulations implementing the ADA define an impairment to include any "physiological disorder, or condition" that affects, among others, the neurological, musculoskeletal, and cardiovascular systems. 29 C.F.R. § 1630.2(h)(1); *Colwell v. Suffolk County Police Dept.,* 158 F.3d 635, 642 (2d Cir.1998), *cert. denied,* 526 U.S. 1018, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999). Plaintiff alleges that he suf-

---

1. A term of art within the ADA.

fered a 10% disability impairment as stated by the State Insurance Fund and that he cannot lift heavy objects. *See Plaintiff's Opposition, Exhibit A.* As a result he suffers small centrally located disc herniation L4–L5. *Defendant's Motion for Summary Judgment, Exhibit D.* Because these are physiological conditions affecting Plaintiff's musculoskeletal system, the Court finds that Plaintiff has an impairment.

### ii. Major Life Activities

The regulations promulgated by the EEOC define major life activities to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). This list is illustrative, and not exhaustive. *See Bragdon,* 118 S.Ct. at 2205. The U.S. Supreme Court has noted that "[t]he plain meaning of the word 'major' denotes comparative importance and suggest[s] that the touchstone for determining an activity's inclusion under the statutory rubric is its significance." *Id.* In determining whether an activity is a major life activity, a court looks to "whether that activity is a significant one within the contemplation of the ADA, rather than whether that activity is important to a particular plaintiff." *Colwell,* 158 F.3d at 642.

The major life activity in which Plaintiff alleges to be substantially limited is lifting, which has been recognized as a "major life activity" under EEOC regulations. *See id.* 29 C.F.R. § 1630.2(i); *see also Colwell,* 158 F.3d at 642 (activities listed in EEOC regulations are treated as major life activities *per se,* rather than as major life activities only to the extent that they are shown to affect a particular ADA plaintiff). Therefore, the Court concludes that Plaintiff has met the second prong of the analysis, in that lifting is a major life activity.

### iii. Substantially limiting

Where Plaintiff's claim falters is at the third and final step of the analysis: he has not shown that his impairment substantially limits his ability to lift. In order to prove such a limitation, Plaintiff is required to demonstrate: (i) that his injuries have precluded him from performing a major life activity that the average person in the general population can perform; or (ii) that he is significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. *Id.* § 1630.2(j)(1). The EEOC has gone a step further and recommended that a court, in applying this standard, consider the nature and severity of the impairment, its expected duration, and its permanent or long-term impact. *Id.* § 1630.2(j)(2); *Gillen v. Fallon Ambulance Service, Inc.,* 283 F.3d 11, 21 (1st Cir., 2002).

The Court finds that Plaintiff is not substantially limited in the major life activity of lifting. *See Snow v. Ridgeview Med. Ctr.,* 128 F.3d 1201, 1207 (8th Cir.1997) (holding that a restriction on lifting more than twenty-five pounds is insufficient to constitute a disability within the meaning of the ADA); *Ray v. Glidden Co.,* 85 F.3d 227, 229 (5th Cir.1996) (theorizing that the "inability to perform heavy lifting does not render a person substantially limited" in the major life activity of lifting). While Plaintiff has presented limited evidence that he cannot lift heavy objects, the heavy paint containers ("pailas"), this alone is insufficient. He has not brought forth any other medical documentation that estab-

lished his limitations to lift, to wit, the maximum weight he can lift. As previously cited, case law holding that restrictions on heavy lifting, by themselves, are not indicative of a disability is extensive. *See e.g. Snow*, 128 F.3d 1201; *Ray*, 85 F.3d 227.

In *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999), the Supreme Court expounded on the evidence that a plaintiff must bring forth in order to defeat summary judgment. In that case, it held that a monocular individual, like any other ADA plaintiff, must proffer evidence demonstrating the extent of the limitation on the designated major life activity—in that particular case, the ability to see. *Id.* at 567, 119 S.Ct. 2162, 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518. The Supreme Court's recent decision in *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 689, 151 L.Ed.2d 615 (2002) similarly held that a plaintiff afflicted with carpal tunnel syndrome cannot rely upon that diagnosis alone to prove a disability under the ADA. *Toyota*, 122 S.Ct. at 692. The Court therein stated that:

> "An individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely from person to person .... Given the[ ] large potential differences in the severity and duration of the effects of carpal tunnel syndrome, an individual's carpal tunnel syndrome diagnosis, on its own, does not indicate whether the individual has a disability within the meaning of the ADA." *Id.*

■ The standard therefore in ADA cases is that ... "[A] plaintiff must proffer evidence from which a reasonable inference can be drawn that [a major life] activity is substantially or materially limited." *Snow*, 128 F.3d at 1207. The evi-

dence needed to establish the limiting qualities of a particular impairment almost always will be unique to that impairment and to the individual involved. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

In the case at bar, the Court finds that Plaintiff has failed to provide any medical records or certificates indicating the longevity or permanency of his disability, and to certify in what manner the alleged disability affects his capacity to lift other objects of varying weights. In fact, the record is devoid of any medical documentation that evidences any medical condition at all after the incident in question. There is simply no evidence that Plaintiff has received any other medical attention for his condition after his release from treatment at the State Insurance Fund in August 2000. As evidenced by case law, that he was injured and experienced pain is not enough to meet his evidentiary burden, where such essential facts as to what degree his condition renders him unsuited to lift, and the amount of weight he can lift, remain speculative. Without more, the Court cannot possibly hold that Plaintiff is substantially limited in the major life activity of lifting. *See Fox v. American Airlines*, 2001 WL 1597851 (N.D.Tx.2001) (Where Plaintiff failed to present a record of impairment, the Court found that he had failed to raise a genuine issue of material fact as to his disability).

On the basis of the record before it, the Court therefore concludes that Plaintiff is not disabled under the Act because he is not limited in the major life activity of lifting. Although the Court finds that Plaintiff is impaired, it finds that he has not adduced sufficient evidence that he is substantially limited in the major life activity of lifting to create a material dispute of fact. *See Gelabert–Ladenheim v. Ameri-*

*can Airlines,* 252 F.3d 54, 58 (1st Cir. 2001). Having found that Plaintiff failed the third prong of the disability determination, the Court **DISMISSES WITH PREJUDICE** his ADA claims.

## V. CONCLUSION

Having established that Plaintiff suffered from an impairment, but that he is not limited in a major life activity, the Court does not reach the issue of whether Defendant provided Plaintiff with a reasonable accommodation or the scope of Defendant's accommodation duties under the law. The Court therefore **DISMISSES** Plaintiffs' claims brought forth under the Americans with Disabilities Act **WITH PREJUDICE.** Regarding Plaintiff's claims under Puerto Rico law, the Court declines to exercise pendent jurisdiction over them, and therefore **DISMISSES** the same, **WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**