# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1685

_____

Rachael Lundquist,                          *
                                            *
        Plaintiff-Appellant,              *
                                            *   Appeal from the United States
      v.                                *   District Court for the
                                            *   District of Minnesota.
Rice Memorial Hospital,                     *
                                            *        [UNPUBLISHED]
        Defendant-Appellee.              *

_____

Submitted: December 15, 2004
Filed: January 26, 2005

_____

Before WOLLMAN, LAY, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

This appeal raises two issues: First, whether the district court erred in finding that Rachael Lundquist was not disabled within the meaning of the Americans with Disabilities Act (ADA) and granting Rice Memorial Hospital's (RMH) summary judgment motion on that basis; second, whether the district court erred in denying Lundquist's motion to amend an order setting a filing deadline for amended pleadings.

## I.    Procedural and Factual Context

Rachael Lundquist was employed by RMH as a nurse during three distinct time periods. She was first hired in 1968. She left the position voluntarily in 1975 due to child care responsibilities and injuries she sustained in a car accident.

In 1980, RMH rehired Lundquist as a nurse. In 1995, she experienced neck pains. She was diagnosed with degenerative changes at several levels of her neck and a herniated disc. By March 1995, Lundquist's doctors restricted her physical activities to exclude any heavy lifting, so RMH accommodated this restriction by assigning Lundquist to a shift coordinator position. In July 1995, Lundquist's neurologist restricted her physical activity further and ordered that she should not lift more than fifteen to twenty pounds at one time, and that she should not lift this weight repetitively for more than thirty consecutive minutes. The doctor also restricted bending and twisting. By August 1995, RMH placed Lundquist on medical leave pursuant to the Family and Medical Leave Act ("FMLA").

Then, on February 27, 1996, RMH terminated Lundquist for the first time, reasoning that she could not perform the essential functions of a nursing job. Lundquist filed a grievance which resulted in an arbitration order that Lundquist should be allowed to return to work if she was willing to perform the essential requirements of her job. She returned, but could or would not do any lifting, so on January 15, 1997, RMH placed Lundquist on administrative leave.

On January 27, 1997, Lundquist filed an action against RMH alleging disability discrimination under the ADA and various Minnesota statutes ("*Lundquist I*"). *Lundquist I* concerned the time period from July 1995 through January 27, 1997, and alleged that RMH discriminated against Lundquist on the basis of disability by (1) placing her on unrequested medical leave; (2) wrongfully terminating her

employment in February 1996; and (3) failing to provide reasonable accommodation for her disability.

While Lundquist was on leave the first time, RMH sent two different job descriptions to her. RMH instructed Lundquist to submit the job descriptions to her neurologist to assess whether she could perform either of them. The neurologist explained that although Lundquist could perform the "cerebral" aspects, she could not meet the physical demands of either. He later stated that if lifting is an essential duty of a job, then Lundquist would not be able to perform that job.

During Lundquist's second leave of absence, RMH required Lundquist to undergo a functional capacities evaluation (FCE) to determine whether she could fulfill the physical requirements of a staff nurse position. The FCE concluded that Lundquist could not perform patient transfers except under very limited circumstances but could carry out most other physical activities associated with registered nursing. RMH considered this statement to be "inconclusive" and ordered another FCE. The second FCE concluded that Lundquist could "rarely" or "occasionally" lift or push weight in excess of twenty pounds.

RMH also hired a company to create a functional job description for the staff nurse position and sent it to Lundquist's doctor to assess whether she could meet the requirements of the position, with or without reasonable accommodations, as defined by the description. The doctor responded that Lundquist could not meet some of the physical demands in the description.

RMH fired Lundquist for a second time on December 31, 1997. Based on her medical evaluation, RMH reasoned that her physical restrictions were permanent and that she was unable to perform the essential functions of her job.

In April 1998, Lundquist brought a motion to amend a pretrial order setting forth the deadlines for amending the complaint in *Lundquist I*. Although the deadline had passed, Lundquist hoped to add new counts of retaliatory discharge under the ADA and a Minnesota statute to her original complaint in light of the December discharge. The district court denied Lundquist's motion and enforced the original deadline. Lundquist did not appeal the denial of her motion. Subsequently, RMH brought a motion for summary judgment. On March 29, 1999, the district court released an order dismissing the allegations in *Lundquist I*, which Lundquist did not appeal.

Instead, on February 20, 1999, Lundquist filed another action against RMH ("*Lundquist II*"). This action again claimed disability discrimination under the ADA and various Minnesota statutes, but it was allegedly related to a different time period than *Lundquist* I, and involved the heretofore unlitigated claim for Lundquist's (second) wrongful termination by RMH on December 31, 1997.

RMH filed a motion to dismiss *Lundquist II* based on *res judicata* ("claim preclusion"). The district court granted RMH's motion. On appeal, the Eighth Circuit reversed. *See Lundquist v. Rice Memorial Hosp.*, 238 F.3d 975, 978 (8th Cir. 2001) (per curiam). Since *Lundquist II* involved a claim arising from a termination of Lundquist that occurred *after* the first suit was filed, claim preclusion did not apply. *Id.* at 977 (noting "it is well settled that claim preclusion does not apply to claims that did not arise until after the first suit was filed") (*citing Baker Group, L.C. v. Burlington N. & Santa Fe Ry. Co.*, 228 F.3d 883, 886 (8th Cir. 2000)).

Upon remand, RMH again brought a motion for summary judgment. This time, RMH simply argued that there was no genuine issue of material fact as to whether Lundquist was disabled within the meaning of the ADA. The district court agreed, concluding that Lundquist had not alleged a disability. Lundquist's ADA claims

were dismissed with prejudice. The district court[1] declined to exercise supplemental jurisdiction as to the remaining state law claims and they were dismissed without prejudice. *See* Order dated February 6, 2004, at 11 ("Order"). Lundquist now appeals the district court's post-remand judgment in *Lundquist II*.

## II.  Discussion

This panel reviews a district court's grant of summary judgment de novo. *Brunko v. Mercy Hosp.*, 260 F.3d 939, 941 (8th Cir. 2001).

The first element that any plaintiff must establish to succeed on a disability discrimination claim is that the individual in fact lives with a "disability" as that term is defined by the ADA. *See* 42 U.S.C. § 12102(2)(a) (stating that a person is disabled within the meaning of the ADA if she has, *inter alia*, a "physical or mental impairment that substantially limits one or more of the major life activities"). This element is of threshold importance; if a plaintiff cannot establish this element, the claim is meritless. *See Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1206 (8th Cir. 1997) ("Whether an impairment substantially limits a major life activity is a threshold question.").

Although lifting is a major life activity, *see Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir. 1997) (*citing* 29 C.F.R. § 1630.2(i)), Eighth Circuit precedent states that a "general lifting restriction without more is insufficient to constitute a disability within the meaning of the ADA." *Brunko*, 260 F.3d at 941; *accord Mellon v. Federal Express Corp.*, 239 F.3d 954, 957 (8th Cir. 2001) (same); *Gutridge v. Clure*, 153 F.3d 898, 901 (8th Cir. 1998) (same); *Snow,* 128 F.3d at 1207 (same); *see also Helfter*, 115 F.3d at 617, 618; *Aucutt v. Six Flags Over Mid-America,*

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

*Inc.,* 85 F.3d 1311, 1319 (8th Cir. 1996).  This precedent has been followed time and again in this jurisdiction because the evidence presented in these types of cases has suggested that weight lifting limitations – without more – do not tend to significantly restrict "a person's ability to perform a class of jobs or a broad range of jobs in various classes as compared to the average person with comparable skills." *Helfter*, 115 F.3d at 617.  Rather, they tend to prevent people from performing a narrow class of jobs.

Even if we consider, *arguendo*, all the evidence that was referenced in Lundquist's brief – including facts and evidence existing prior to January 27, 1997 (the date *Lundquist I* was filed) – it is apparent that Lundquist alleges solely a 25-30 pound long-term lifting limitation.  Our precedents prohibit the advancement of such a case under the ADA.  In order to survive RMH's motion for summary judgment, Lundquist would have to present evidence creating a genuine dispute as to whether she had a physical limitation that was *more* than a general lifting restriction and therefore constituted a "disability."  This she has not done.  On this basis alone, her appeal is denied.

Lundquist claims the district court concluded that a genuine issue of material fact did not exist solely because it had a faulty understanding of the doctrine of *res judicata*, and therefore erred when it narrowed the scope of evidence it would consider in adjudicating whether Lundquist was disabled.  Specifically, the district court refused to entertain any facts or evidence related to Lundquist's condition prior to January 27, 1997 (the filing date of *Lundquist I*).  The district court reasoned that the doctrine of *res judicata* precluded it from considering "all of the facts and evidence adjudicated" in *Lundquist I*.  *See* Order at 2.  The court reasoned that although "Lundquist present[ed] several pieces of new evidence" to support her claim of disability in *Lundquist II*, "[s]ome of this 'new' evidence" was "precluded because it was in existence at the time . . . of the first suit."  *Id.* at 8 (*citing Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 761-62 (8th Cir. 2003) (discussing the

doctrine of collateral estoppel and stating "[w]here the first and second actions are both based on an evaluation of the same historical facts, a litigant seeking to introduce newly discovered evidence otherwise in existence at the time of the first suit may not argue that the facts have changed in the time period between the two actions . . . to avoid the preclusive effect[s] of the first decision")). Lundquist argues this was error because the doctrines of *res judicata* and collateral estoppel operate to preclude *issues*, not facts. Lundquist misunderstands the nuances of these doctrines.

Since we had previously held that *res judicata* did not apply, *see Lundquist II*, 238 F.3d at 977, we acknowledge that it was confusing when the district court said that the doctrine of *res judicata* precluded it from considering all the facts and evidence relating to Lundquist's disability that were adjudicated in *Lundquist I*. Nonetheless, the district court arrived upon the correct result.

As we stated in the prior appeal of this matter, claim preclusion (*res judicata*) operates to bar a party from litigating identical *causes of action*, such as a wrongful termination claim under the ADA. *See Lundquist II*, 238 F.3d at 977. *If* the legal elements of *res judicata* are satisfied, then the doctrine forecloses all that might have been litigated previously. *See Liberty Mut. Ins. Co.*, 335 F.3d at 758 (comparing *res judicata* and *collateral estoppel* and *citing Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979)); *see also Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948) (stating that *res judicata* bars relitigation of "every matter which was offered and received to sustain or defeat the claim or demand" and "any other admissible matter which might have been offered for that purpose"). Collateral estoppel, or issue preclusion, operates more narrowly to bar relitigation of a single *ultimate issue of fact* (not an entire cause of action) when that issue of fact has actually been determined by a valid judgment in a prior proceeding between the same parties. *See Liberty Mut. Ins. Co.*, 335 F.3d at 758. Collateral estoppel relates to the sub-elements and facts one must prove up in order to sustain an overarching cause of action.

In light of the above, we interpret the district court's post-remand order as making two points: First, since *Lundquist I* already resolved the ultimate issue of fact of Lundquist's disability in the negative, relitigation of that issue of fact in *Lundquist II* would be precluded by the doctrine of collateral estoppel[2] unless some new evidence of disability – other than evidence offered in *Lundquist I* – were presented; second, although Lundquist would be given an opportunity to produce truly "new" evidence in this second case, Lundquist could not receive a second chance at producing evidence of disability which she either did produce or should have produced in *Lundquist I*, as collateral estoppel bars that result, as well. In so ruling, the district court was correct. *See Liberty Mut. Ins.*, 335 F.3d at 761, 762-63.

In the prior appeal of this case, we instructed the district court that it could mention the "events that occurred prior to January 1997," but "solely for purposes of historical foundation." *Lundquist II*, 238 F.3d at 977 n.2. We explained that conduct occurring "prior to January 1997 cannot, as a matter of law, constitute proof of discrimination." *Id*. The same is true for Lundquist's evidence of disability. To the extent that Lundquist attempted to present evidence of disability in *Lundquist II* which was available for production or was actually produced and ruled upon in *Lundquist I*, that evidence is barred from constituting proof of disability in *Lundquist II*. *See Liberty Mut. Ins. Co.*, 335 F.3d at 761, 762-63 (stating that where a party had an opportunity to present various pieces of evidence but failed to do so, "it is precluded from attempting to present that additional evidence" in the second suit).

To this panel Lundquist asserts that she is not attempting to relitigate settled facts; rather, her argument is that facts which arose before January 1997 should be "available" to the parties and to the court in this action. Technically this statement might be correct, but it is not an accurate assessment of what Lundquist sought to

---

[2]Granted, the district court used the term "*res judicata*" here, but given the substance of its reasoning, we think it meant to say "collateral estoppel."

accomplish in the district court. Lundquist's odd theory – i.e., "that the facts are cumulative," Brief for Appellant at 5 – cannot avoid the preclusive effects stemming from *Lundquist I.*

In light of the evidentiary parameters set by the district court, Lundquist presented only one truly new piece of evidence – a report by a rehabilitation consultant which recounts the many unsuccessful efforts Lundquist made in trying to find a new nursing job. This is insufficient to establish a disability under the ADA. It is true that factors relevant to whether someone is disabled include "the number and type of jobs from which the impaired individual is disqualified [and] the geographical area to which the individual has reasonable access . . . ." *See Helfter,* 115 F.3d at 617. But these factors are not determinative, whereas our existing precedent is. Even if such factors were determinative, the rehabilitation consultant's affidavit does not support Lundquist's allegation that the reason she was unable to secure any nursing positions was because her disability disqualified her from those jobs. The rehabilitation consultant concedes that Lundquist's lack of success is linked to the fact that Lundquist did not have a bachelor of science degree in nursing when she applied for the jobs. Lundquist's brief says it best: "To be sure, these positions might have been closed for some other reason." Brief for Appellant at 14. Thus, we affirm the decision of the district court because no genuine issue exists as to Lundquist's disability.

Lastly, we summarily reject Lundquist's contention that the district court erred in denying her motion to amend an order setting the filing deadline for amended pleadings in *Lundquist I.* This argument is untimely. We refuse to consider it now. *See Orion Fin. Corp. v. Am. Foods Group, Inc.*, 281 F.3d 733, 740 (8th Cir. 2002).

The decision of the district court is AFFIRMED.

_____