# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1957

_____

Sondra L. Samuels, Dr.,           *
                                      *

        Appellant,         *
                                      *   Appeal from the United States

    v.                     *   District Court for the
                                      *   Western District of Missouri.

Kansas City Missouri School District,  *

                                      *

        Appellee.         *

_____

Submitted: November 18, 2005
Filed:  February 14, 2006

_____

Before ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Dr. Sondra L. Samuels (Samuels) brought this action against the Kansas City, Missouri, School District (School District), alleging the School District violated her rights under both the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, and the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654.  The district court[1] granted summary judgment in favor of the School District on both of Samuels's claims.  Samuels appeals the district court's adverse summary judgment ruling.  We affirm.

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

## I.    BACKGROUND

Beginning in 1978, Samuels was employed full time by the School District, where she taught mentally handicapped and learning disabled students. In 1999, Samuels accepted the position of case manager within the School District's Exceptional Education Department (EED). This position required frequent travel to several different schools, extensive walking and stair-climbing, and repetitive handwriting. In October 2000, Samuels applied for and was offered the position of Vocational Resource Educator (VRE) at the Manuel Career & Technical Center, a position that appealed to Samuels because it involved very little handwriting, no outside travel, limited walking, and no significant physical activity. On October 17, 2000, Samuels wrote to the coordinator of the EED, stating she had accepted the VRE position and asking to be released from her position as case manager. Samuels's request was granted, and she was later released from her case manager position in December 2000.

Beginning in November 2000, Samuels experienced a series of unfortunate mishaps. On November 6, 2000, Samuels slipped and fell while entering a high school, sustaining injuries to her knees, neck, and back. A few weeks later, Samuels was involved in a car accident, injuring her back and ribs and aggravating her fall injuries. In January 2001, Samuels slipped and fell on ice outside a restaurant, again aggravating her prior injuries.

Following her first accident in November 2000, Samuels notified the VRE program director of her injuries and told him she would be on medical leave. However, on January 12, 2001, the VRE program director wrote Samuels, stating her job offer was being withdrawn because he could not continue to wait for Samuels to become available or to receive communication regarding her status. As a result of these accidents and the injuries she sustained, Samuels was on short-term leave from her position with the School District from November 2000 until approximately April 2001. While Samuels was on leave, the School District requested she complete the

-2-

requisite FMLA paperwork. Samuels did not return the required documentation to be placed on FMLA leave, although Samuels alleges she was never provided with the paperwork. During Samuels's leave period, the School District continued to compensate Samuels at her normal rate of pay, using her sick leave, and held open her case manager position until she returned.

In April 2001, Samuels's physician released her for return to work on a part-time basis with restrictions. During the remainder of the 2001 school year, Samuels returned to her previous position as case manager but was unable to perform the physical tasks required of her position. Thus, she was assigned to perform light duty clerical work in the EED office on a reduced schedule of twenty hours per week. When Samuels returned to work, she requested and received intermittent leave to attend physical therapy and other medical appointments relating to her injuries.

On May 21, 2001, Samuels submitted to the School District a formal request for job accommodations due to her disabilities and limitations, along with a Medical Assessment of Functional Capability Report. In her formal request, Samuels asked to be assigned to buildings with one floor or an elevator, accessible handicap parking or minimal walking, and room to perform stretching exercises. She also requested time for therapy and doctor's appointments.

In response to Samuels's formal request for job accommodations, Samuels was evaluated by two medical professionals to determine whether she needed any accommodations to perform the essential functions of her position. Samuels's physician, Dr. S.R. Katta (Dr. Katta), determined: Samuels still was recovering from injuries she sustained in November 2000; her capacity to lift or carry objects was limited to less than five pounds; Samuels could stand or walk for a maximum of one hour each day; she could not sit for more than one hour without interruptions for rest and stretching; and she lacked capacity to climb, stoop, crouch, kneel, or crawl. Pursuant to School District policy, Samuels also was examined by Dr. Robert Bruce

(Dr. Bruce), a physician selected by the School District, who determined Samuels's impairments were resolved without any lasting effects, and she did not qualify for an accommodation. School District policy also states the School District will pay for an independent medical evaluation if the opinion of the School District's doctor and the employee's doctor differ. Dr. Craig Lofgreen (Dr. Lofgreen) was hired for this purpose, and after an examination, Dr. Lofgreen believed Samuels did not appear to be disabled and did not qualify for an accommodation. On June 4, 2001, the School District notified Samuels her request for a job accommodation was denied.

On July 12, 2001, Samuels was transferred to Chester Anderson Middle School (Anderson) to work as a learning disability teacher. Anderson is an alternative school for students who have been diagnosed with mental and behavioral disorders and many of whom have a history of violent and disruptive behavior toward others. Charlene Luster (Luster), the director of the EED, decided to transfer Samuels based on her understanding Samuels had requested and agreed to be transferred to Anderson, a school that satisfied the majority of Samuels's criteria. Samuels, however, alleges she never spoke to anyone about a transfer to Anderson and she did not want to be transferred to Anderson because she lacked the physical capacity to control the students. Samuels also alleges during her time at Anderson her duties exceeded the work restrictions prescribed by her doctor, she was not provided with a handicap parking spot, and she had to walk one-half block to and from the school building.

On September 10, 2001, Samuels was injured at Anderson when a student kicked a chair in which she was sitting, causing pain to her lower back, ribs, neck and left leg. A physician with Employer Health Services, a medical service provider retained by the School District, diagnosed Samuels with a vibratory injury to her left lower extremity and back. Samuels was cleared to return to work on September 14, 2001; however, she requested, and was granted, an extended medical leave of absence without pay from September 10, 2001, until August 31, 2002. In August 2002,

Samuels returned to work as an elementary school counselor until December 2003, when she again requested a long-term leave of absence due to hypertension.

On March 3, 2004, Samuels brought suit against the School District, alleging (1) the School District violated the ADA by discriminating against her and refusing to provide her reasonable accommodations for her disabilities, and (2) the School District violated the FMLA by refusing to restore her to the position she held or a comparable position when she returned to work. The district court granted summary judgment in favor of the School District, holding (1) Samuels was not disabled within the meaning of the ADA, and (2) Samuels's FMLA claim was barred by the two-year statute of limitations, and the three-year extended limitations period did not apply because Samuels failed to demonstrate a willful violation of the FMLA by the School District. Samuels appeals.

## II.    DISCUSSION

### A.    Standard of Review

We review de novo a grant of summary judgment, applying the same standards as the district court. Woodland v. Joseph T. Ryerson & Son, Inc., 302 F.3d 839, 841-42 (8th Cir. 2002). Summary judgment for the School District is proper if the evidence, viewed in the light most favorable to Samuels and giving her the benefit of all reasonable inferences, shows there are no genuine issues of material fact and the School District is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Mayer v. Nextel W. Corp., 318 F.3d 803, 806 (8th Cir. 2003).

### B.    ADA Claim

Under the ADA, employers are barred from discriminating "against a qualified individual because of the disability of such individual." 42 U.S.C. § 12112(a). To establish a prima facie case under the ADA, Samuels must demonstrate (1) her condition qualifies as a disability within the meaning of the ADA, (2) she is qualified to perform the essential functions of her position with or without a reasonable

accommodation, and (3) she has suffered an adverse employment action due to her disability. Spangler v. Fed. Home Loan Bank of Des Moines, 278 F.3d 847, 850 (8th Cir. 2002) (citing Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 948 (8th Cir. 1999)).

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A). "Whether an impairment substantially limits a major life activity is a threshold question." Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1206 (8th Cir. 1997). Evidence of a medical diagnosis of an impairment is insufficient. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002). The impairment must be substantial, that is, considerable or to a large degree. Id. at 196. An individual's major life activities are substantially limited if she is unable to perform a basic function the average person in the general population can perform, or is significantly restricted in the condition, manner, or duration under which she can perform a major life activity as compared to an average person in the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). "When the major life activity under consideration is that of working, . . . 'substantially limits' requires, at a minimum, [Samuels shows she is] unable to work in a broad class of jobs." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999); see also Snow, 128 F.3d at 1207. "The inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

Furthermore, temporary impairments with little or no long-term impact are not disabilities. 29 C.F.R. § 1630.2(j)(2)(ii)-(iii). "The impairment's impact must . . . be permanent or long term." Toyota Motor, 534 U.S. at 198. In determining whether a person is substantially limited in a major life activity, we consider (1) the nature and severity of the impairment, (2) its duration or anticipated duration, and (3) its actual or expected long-term impact. Snow, 128 F.3d at 1207 (citation omitted).

-6-

On appeal, Samuels contends she presented sufficient evidence to create a genuine issue of material fact regarding whether she was disabled within the meaning of the ADA. We disagree. The record reveals no evidence Samuels suffers from a long-term or permanent disability. On March 28, 2001, Dr. Katta released Samuels for return to work on a part-time basis beginning April 3, 2001. At that time, Dr. Katta indicated Samuels's need to work a reduced schedule would last about two weeks and the restrictions regarding the overhead use of her arms and the repetitive use of her upper extremities would last only about two months. Similarly, in documentation submitted on April 18, 2001, in support of Samuels's request for leave, Dr. Katta indicated Samuels's need to work a reduced schedule would be approximately six months in duration and failed to describe any chronic conditions. None of the other records prepared by Dr. Katta indicate Samuels's physical limitations would be long-term or permanent. Additionally, Dr. Bruce, the School District's physician, and Dr. Lofgreen, the independent physician, both concluded Samuels did not suffer from a disability and therefore did not qualify for accommodations. The medical records created before and contemporaneously with Samuels's request for accommodations in May 2001 simply are insufficient to create a genuine issue of material fact as to whether Samuels is disabled within the meaning of the ADA.

Samuels relies heavily on medical evaluations performed by Dr. Daniel Zimmerman (Dr. Zimmerman), who examined Samuels in April 2002 with regard to her worker's compensation claim for Samuels's November 2000 fall and the student assault at Anderson. Samuels contends Dr. Zimmerman's conclusion that she suffers a 60% permanent partial disability of her body as a whole demonstrates she is disabled. Again, we disagree. Dr. Zimmerman did not examine Samuels until April 15, 2002, nearly one year after the School District denied Samuels's request for accommodations. Because the determination of whether an individual is entitled to protection under the ADA should be made as of the time of the employment decision, see Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1047 (8th Cir. 1999), we do

not find Dr. Zimmerman's conclusions relevant. Furthermore, even assuming *arguendo* his conclusions were relevant to Samuels's ADA claim, Dr. Zimmerman, in noting several actions Samuels should avoid, did not state Samuels was incapable of working.

We further conclude Samuels failed to offer any evidence of limitations imposed upon her that made her unable "to perform either a class of jobs or a broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(i). Samuels directs our attention to Fjellestad v. Pizza Hut of America, Inc.,188 F.3d 944, 949-50 (8th Cir. 1999), in which this court held there was a triable issue on whether the plaintiff's medical restrictions substantially limited her employment opportunities under the ADA. The plaintiff in Fjellestad presented evidence that, out of 28,000 available jobs in South Dakota fitting her vocational profile, she was eligible for only 1,300 jobs due to her functional limitations. Id. at 949. Additionally, the plaintiff's doctors diagnosed her with a permanent 30% impairment of her upper right arm and restricted her to working no more than three consecutive days. Id. Samuels failed to present evidence of analogous limitations imposed upon her employment opportunities because of her alleged impairments and disabilities. We are unpersuaded by Samuels's reference to a case remarkably distinguishable from her own. Evidence of general temporary work restrictions, without more, is insufficient to constitute a disability within the meaning of the ADA. See Brunko v. Mercy Hosp., 260 F.3d 939, 941 (8th Cir. 2001).

Because Samuels failed to satisfy the threshold requirement of her prima facie case, we affirm the district court's grant of summary judgment to the School District with regard to Samuels's ADA claim.

## C. FMLA Claim

Under the FMLA, an individual asserting a violation must bring her claim within two years of "the last event constituting the alleged violation." 29 U.S.C.

§ 2617(c)(1). If an employer has "willfully" violated the employee's rights under the FMLA, the statute of limitations is extended to three years. Id. § 2617(c)(2). Samuels's complaint alleges the School District's FMLA violation occurred in August 2001. Samuels's complaint was not filed until March 2004. In granting the School District's summary judgment motion, the district court held Samuels's FMLA claim was barred by the two-year statute of limitations because Samuels failed to prove the School District willfully violated the FMLA. On appeal, Samuels contends her FMLA claim is subject to the three-year statute of limitations because the School District willfully violated her rights when (1) the School District did not return Samuels to her former position as case manager upon return from her leave of absence, and (2) the School District transferred Samuels to a teaching position at Anderson knowing it was not an equivalent position.

Arguing one "elementary principal [sic] of law" is " everyone is presumed to know the law and what the law requires of them to conform their actions accordingly," Samuels contends this court should presume School District officials knew their actions violated the FMLA and therefore willfully violated the FMLA. Although the term "willful" has not been defined expressly in the FMLA or by the Supreme Court, we determined in Hanger v. Lake County, 390 F.3d 579, 583 (8th Cir. 2004), that the Supreme Court's definition for "willful" in the context of the Fair Labor Standards Act also applies to the term "willful" under the FMLA. Under that definition, the plaintiff must demonstrate the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Id. (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). Such a standard recognizes an employer's general knowledge about the statute's potential applicability, by itself, fails to demonstrate willfulness. Id. at 584.

With this standard in mind, we conclude Samuels failed to demonstrate the School District knew or acted with reckless disregard as to whether its conduct violated the FMLA. Upon Samuels's return to work on April 15, 2001, Samuels

performed light duty clerical work for the remainder of the school year in the EED in the same position she held before her leave of absence. Samuels worked on a reduced schedule and was granted intermittent leave to attend physical therapy. Following Samuels's request for a transfer to a school with handicap parking, room to perform stretching exercises, and an elevator or only one floor, she was transferred to Anderson, a school satisfying the majority of her criteria, based on Luster's good faith belief Samuels had requested and agreed to be transferred to Anderson. Our review of the record reveals no evidence or reasonable inference that the School District knew its actions were unlawful or showed reckless disregard for whether its conduct was prohibited by the FMLA when granting Samuels's request for a transfer. While the School District presumably knew the FMLA was "in the picture," such general knowledge does not indicate a "willful" violation of the statute. See Hanger, 390 F.3d at 584.

Because Samuels failed to demonstrate a willful violation by the School District, her FMLA claim is barred by the applicable two-year statute of limitations. We therefore affirm the district court's entry of summary judgment in favor of the School District on Samuels's FMLA claim.

## III.   CONCLUSION

For the foregoing reasons, we affirm the district court's entry of summary judgment in favor of the School District.

_____