# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2920

_____

|  |  |  |
|---|---|---|
| Linda M. White, | * | |
| | * | |
| Plaintiff-Appellant, | * | Appeal from the United States District |
| | * | Court for the Eastern District of |
| v. | * | Arkansas. |
| | * | |
| Riverview School District; Hugh | * | [UNPUBLISHED] |
| Burge, Superintendent; and Howard | * | |
| Morris, Assistant Superintendent, | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

Submitted: April 9, 2007
Filed: April 27, 2007

_____

Before MELLOY, BOWMAN, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Linda M. White brought this action against the Riverview School District (the School District), District Superintendent Hugh Burge, and Assistant Superintendent Howard Morris, (collectively, the defendants), alleging the defendants violated her rights under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII), and the Americans with Disabilities Act of 1990, 42 U.S.C. §§

12101-12213 (the ADA). The district court[1] granted summary judgment in favor of the defendants on White's race discrimination claim and her failure-to-accommodate claim. White appeals the district court's adverse summary judgment ruling. We affirm the judgment of the district court.

I.    BACKGROUND[2]

White is an African-American woman who was employed by the School District from the summer of 1995 until September 2000. White was employed via a series of single-year contracts subject to school board approval. In the early years of her employment, White served as a teacher's aide on different campuses and performed a variety of duties. From the 1997-1998 school year through the 1999-2000 school year, White was assigned to assist a wheelchair-bound student at a particular school. Occasionally, after White helped the student to his assigned class, she would be pulled from that class to perform other duties.

Near the end of the 1999-2000 school year, the School District informed White that she would not be retained as a teacher's aide. The School District told White that the student she had been assisting had obtained a motorized wheelchair and would be attending a school where he would not need White's help. The School District informed White that no other aide positions were available at that time. Rather than dismissing White, the School District offered her a position as a lunchroom worker and custodian for the 2000-2001 school year.

---

[1] The Honorable Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas.

[2] Because this case arises from an adverse grant of summary judgment, we present the evidence "in the light most favorable to the non-moving party, drawing all reasonable inferences, without resort to speculation, in favor of the non-moving party." Twymon v. Wells Fargo & Co., 462 F.3d 925, 928 n.2 (8th Cir. 2006) (quotations and citations omitted).

Before accepting the combined lunchroom worker/custodian position, White sent Superintendent Burge a letter, stating, in pertinent part:

> I will be willing to try this new position if stipulations are met. You told me that I will clean several rooms, empty trash, and work as a server in the lunch room. I have a problem cleaning bathrooms due to my surgery, my stomach is weak to certain smells and nasty toilets, I can't help it that's just the way my system is. I hope this is satisfactory with you as a job description. Looking forward to work[ing] with you.

The School District agreed to White's conditions and accommodated White's request not to clean toilets by arranging for another employee to perform that necessary task. White orally informed Assistant Superintendent Morris that she was also physically unable to do heavy lifting; as a result, she was not assigned any heavy lifting in the cafeteria or in her capacity as a custodian.

Shortly after the beginning of school in August 2000, White found her new job aggravated her pre-existing medical conditions, which she describes as including diabetes and related hypertension, anemia, arthritis, and back problems. She informed the School District that she could not do her duties as a lunchroom worker because of the heat in the kitchen and the lifting and stooping required. In response to White's difficulties, Morris placed a fan in her workspace in the kitchen. White also stated she was physically unable to mop or vacuum.

After learning of White's physical difficulties, Morris suggested she see a doctor who could provide the School District with information as to her physical limitations. White visited a doctor and brought in a note excusing her from work for September 6-11, 2000. The note, which is the only evidence of White's physical ailments or limitations in the record, identified her illness or injury as a lower-back strain and stated she was able to return to work on September 11, 2000, without limitation. When she returned to work, however, White informed the School District

that she was physically unable to do the work of a lunchroom worker/custodian. Morris informed White that she could either return to work or resign if she was unable to perform her duties. White submitted a letter of resignation stating she was resigning her position "due to medical reasons" and noting that she would like to return to work for the School District if a teacher's aide position became available. After she resigned, White's position as lunchroom worker and custodian was filled by a Caucasian woman who had previously been working for the School District as a substitute teacher.

The day after White submitted her resignation, the School District hired Rachel Covington, a Caucasian woman, as a teacher's aide. Before Covington was offered the position, the School District offered it to an African-American woman, who rejected the job. The teacher's aide position Covington filled involved changing the diapers of a severely disabled student. The School District explained to White that she was not offered the position because of her previously expressed difficulties with foul odors.

White contends she was not retained as a teacher's aide or hired for the subsequently available teacher's aide position because of her race, in violation of Title VII. She also alleges the School District did not accommodate her impairments and limitations and instead forced her to resign, in violation of the ADA. After filing proceedings with the Equal Employment Opportunity Commission, White commenced the instant suit. The district court granted summary judgment in favor of the defendants on both of White's claims. This appeal followed.

## II.   DISCUSSION

### A.   Standard of Review

We review the district court's grant of summary judgment de novo. Canady v. Wal-Mart Stores, Inc., 440 F.3d 1031, 1034 (8th Cir. 2006). We will affirm if, viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Samuels v. Kansas City Mo. Sch. Dist., 437 F.3d 797, 801 (8th Cir. 2006). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, No. 06-1496, 2007 WL 967315, at *6 (8th Cir. Apr. 3, 2007).

### B.   Race Discrimination Claim

Because White presented no direct evidence of racial discrimination, we apply the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, the plaintiff must first establish a prima facie case of employment discrimination. Twymon, 462 F.3d at 934. If the plaintiff presents a prima facie case, the burden of production shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1046 (8th Cir. 2002). If such a rationale is produced, the plaintiff must present evidence that the nondiscriminatory reason offered is, in fact, a pretext for intentional discrimination. Twymon, 462 F.3d at 935. In applying the McDonnell Douglas framework, we need not consider whether the plaintiff has established a prima facie case if the defendant-employer has offered a legitimate, nondiscriminatory rationale for its actions that the plaintiff has not rebutted. See, e.g., Arraleh v. County of Ramsey, 461 F.3d 967, 976 (8th Cir. 2006) (declining to examine whether a prima facie case of employment discrimination had

been established and instead relying upon the employee-plaintiff's failure to show the employer-defendant's stated rationale to be a pretext in upholding an adverse grant of summary judgment). Such is the case at hand.

White alleges she was not retained as a teacher's aide nor hired for a different teacher's aide position due to her race. The School District has provided race-neutral explanations for each of those employment decisions and White has not shown those rationales to be pretexts for race discrimination. The School District indicated it did not retain White in her original position because the duties she primarily performed —assisting a particular student—were no longer needed. While White has averred there were other disabled students she could have assisted or other roles she could have performed if she had been retained as a teacher's aide, she has offered no evidence to support that assertion. As to the position that later became available, the School District explained White was not offered the position, which was to involve changing the diapers of a disabled student, because White had previously indicated she was not able to perform duties where she would be exposed to foul odors. White has not put forth any evidence tending to show that these rationales were pretextual.

C.    ADA Claim

In her ADA claim, White alleges she was forced to resign her position as a custodian/lunchroom worker because the School District refused to accommodate her physical limitations. "Under the ADA, employers are barred from discriminating 'against a qualified individual because of the disability of such individual.'" Samuels, 437 F.3d at 801 (quoting 42 U.S.C. § 12112(a)). To establish a prima facie case under the ADA, a plaintiff must demonstrate: 1) she has a condition qualifying as a disability as defined by the ADA; 2) she is able to perform the essential functions of her job with or without reasonable accommodation; and 3) she suffered an adverse employment action because of her disability. Id.

The district court's grant of summary judgment on White's ADA claim was proper because White failed to establish a prima facie case of discrimination based upon disability. First, there is insufficient evidence that White suffers from a disability as that term is defined in the ADA. The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A). In her pleadings White references "preexisting physical conditions" and "impairments and limitations." White lists her ailments as including diabetes and related hypertension, anemia, arthritis, and back problems, without providing any evidence of these conditions or their impact on her ability to engage in major life activities. The only evidence in the record as to White's physical impairment is a physician's note listing the nature of White's illness as a lower back strain and certifying her ability to return to work without limitation. Further, White presents no evidence indicating the School District regarded her as disabled under the ADA. Cf. Wenzel v. Mo.-Am. Water Co., 404 F.3d 1038, 1041 (8th Cir. 2005) (noting that "[i]ndividuals who are regarded as having a disability, although not actually disabled, are protected by the ADA"). General assertions of physical problems are insufficient to establish White has a condition qualifying as a disability as defined by the ADA.

Second, White has not demonstrated that she is qualified to perform the essential functions of her job, with or without accommodation. White stated she could not do the work required in her final employment at the School District. Attempts at accommodation—including limiting her duties and placing a fan in her work space—were unsuccessful. White resigned "due to medical reasons," despite certification from her doctor indicating she could return to work without restrictions. White's statements and actions demonstrate she is not "able to perform, with or without accommodation, the essential functions of the employment position she holds." Spangler v. Fed. Home Loan Bank of Des Moines, 278 F.3d 847, 850 (8th Cir. 2002) (quotations and alteration omitted).

Because White failed to establish a prima facie case of discrimination under the ADA, the district court properly granted summary judgment in favor of the defendants.

III.   CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____