# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1434

_____

Jeanette Brannon,⁣              *

                                 *

         Appellant,         *

                                 *   Appeal from the United States

     v.                  *   District Court for the

                                 *   Eastern District of Missouri.

Luco Mop Company,     *

                                 *

         Appellee.        *

_____

Submitted: November 16, 2007
Filed: April 3, 2008

_____

Before MELLOY, BRIGHT, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Jeannette Brannon appeals the district court's[1] denial of her motion to strike and its grant of Luco Mop Company's motion for summary judgment in Brannon's discrimination action brought under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. For the reasons explained below, we affirm.

---

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

From June 2000 until Brannon's termination on April 26, 2005, Luco Mop employed Brannon as a packer in its St. Louis production facility. In this position, Brannon was responsible for packing mop heads into boxes and then stacking those boxes onto pallets. While employed at Luco Mop, Brannon suffered from Type II diabetes and neuropathy. Because of her diabetes, she had a partial toe and foot removal in 2002 and a middle toe removal in 2004. Luco Mop accommodated Brannon following these surgeries by allowing Brannon to store medication in the office, permitting a healthcare professional to come into the facility to insert an intravenous line into Brannon's arm, and providing updated equipment that would allow Brannon to work faster and without as much lifting.

On March 8, 2005, Brannon suffered an injury from a splinter in her toe. She informed Luco Mop of the injury and stated she would return to work when released by her podiatrist. The following day, Brannon underwent surgery on her toe because the splinter had caused an infection. Her boyfriend and co-worker, Patrick Bone, verbally informed Luco Mop of Brannon's condition. On March 16, Bone hand-delivered to Luco Mop president John Shalhoub a "Return to Work Form," indicating Brannon would be expected to return to work on April 18, 2005. Subsequently, Bone delivered two additional "Return to Work Forms" on April 12 and April 26,[2] providing expected return-to-work dates of April 26 and May 23, respectively.

After consulting with his attorney, Shalhoub sent Brannon a letter on April 26, 2005, advising her that she was being terminated immediately because of "extended absence[s]" and "deficient" work quality, that caused strain on Luco Mop's "ability to meet [its] production requirements." This lawsuit followed. In this action, Brannon

---

[2]Shalhoub contends that he never received the April 12 "Return to Work Form."

claims that Luco Mop terminated her because of her disability and "failed to reasonably accommodate [her] with respect to her disability."

Following discovery, Luco Mop moved for summary judgment, arguing that: (1) Brannon failed to establish that she was disabled within the meaning of the ADA because she neglected to show that her diabetes substantially limited a major life activity; (2) Brannon was not a "qualified individual" under the ADA because she could not show that she was able to perform the essential functions of her job, that is, regular and reliable attendance, with or without a reasonable accommodation; and (3) Brannon failed to show that Luco Mop's decision to terminate her employment was linked to the alleged discriminatory animus.

In response, Brannon sought to strike Luco Mop's Statement of Uncontroverted Material Facts because the citations to the record contained therein listed only pages and not specific lines on the pages as required by local rule. Brannon also sought to strike Shalhoub's affidavit, which was filed in support of the motion for summary judgment, on the basis that the affidavit violated Federal Rule of Civil Procedure 56. In opposing Luco Mop's summary judgment motion, Brannon stated that: (1) her diabetes and diabetic neuropathy were physical impairments which substantially limited her major life activities of walking, standing, sleeping, and eating; (2) she was qualified to perform the essential functions of her job with the reasonable accommodations of being permitted to sit when experiencing balance problems and being allowed short leaves of absence to receive surgical treatment for foot problems; and (3) Luco Mop's stated reasons for termination–poor production and excessive absences–were pretextual.

The district court denied Brannon's motion to strike, holding that Luco Mop's Statement of Uncontroverted Material Facts did not violate Rule 4.01(E) of the Local Rules of the United States District Court for the Eastern District of Missouri and that Federal Rule of Civil Procedure 12(f) does not permit the striking of affidavits. In

granting Luco Mop's motion for summary judgment, the district court first decided that there was a material question of fact concerning whether Brannon was limited in the major life activity of walking and that there was sufficient evidence for a jury to find that Brannon was disabled under the ADA. However, even if Brannon was disabled under the ADA, she was unable to show that she would be able to perform the essential functions of her job with her asserted reasonable accommodations. The court noted the position of a packer had to be performed from a standing position, and thus it would not be reasonable to permit Brannon to sit for short periods of time. Also, because Brannon had missed 40 of the 77 work days preceding her termination, the court found that Brannon had failed to show that any reasonable accommodation would have allowed her to perform the essential function of attendance at work. Finally, the court noted that even if Brannon had demonstrated that a reasonable accommodation would have permitted her to perform the essential functions of her job, Shalhoub's testimony that Brannon was terminated because of poor performance and excessive absenteeism, rather than her disability, was undisputed.

On appeal, Brannon first contends that the district court erred in failing to strike Luco Mop's Statement of Uncontroverted Material Facts and Shalhoub's affidavit filed in support of Luco Mop's motion for summary judgment. Second, she claims the district court erred by not using the modified burden-shifting analysis as her claim was based on reasonable accommodation and not disparate treatment, and that under the modified burden-shifting analysis, the district court should have denied Luco Mop's motion for summary judgment.

## II.

### A.

First we address Brannon's claim that the district court abused its discretion in refusing to (1) strike Luco Mop's Statement of Uncontroverted Material Facts for

failure to comply with local rules and the Federal Rules of Civil Procedure, and (2) either strike or ignore John Shalhoub's affidavit because it was filed in bad faith and did not comply with the Federal Rules of Civil Procedure. See Davis v. U.S. Bancorp, 383 F.3d 761, 765 (8th Cir. 2004) (abuse of discretion standard of review). Luco Mop's Statement of Uncontroverted Material Facts cited to specific pages of the deposition testimony it relied upon, but not to specific lines of the pages. Brannon claims that this violates Local Rule 4.01(E) (providing that a statement of uncontroverted material facts must be attached to a summary judgment motion and that each numbered fact must "indicate[] whether each fact is established by the record, and, if so, the appropriate citations" to the record). Brannon states that she was subjected to "an undue burden and hardship . . . to sift through 'appropriate citations'" because Luco Mop's Statement of Uncontroverted Material Facts included 98 citations to deposition testimony. Considering that the predominant reason for a citation rule such as this one is "to prevent a district court from engaging in the proverbial search for a needle in the haystack," and the district court did not indicate that it was burdened by the form of the citations provided by Luco Mop, see Northwest Bank & Trust Co. v. First Ill. Nat'l Bank, 354 F.3d 721, 725 (8th Cir. 2003) (noting that "concision and specificity required by [local rule] seek to aid the district court in passing upon a motion for summary judgment"), we do not find that the district court abused its discretion in denying Brannon's motion to strike the statement. We agree with the district court that nothing in the rule required Luco Mop's citations to be line-specific, and we decline to reverse based on local rule over which the district court retains considerable discretion. See Drake v. Scott, 812 F.2d 395, 401 (8th Cir. 1987) ("It is normally for the district court to enforce compliance with its local rules.").

Brannon also argues that the district court should have struck John Shalhoub's affidavit because it violated Federal Rule of Civil Procedure 56(e) (affidavit must be made on personal knowledge, provide facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated) and 56(g) (if district

court determines that an affidavit is submitted in bad faith or solely for delay, then the court must order the submitting party to pay reasonable expenses incurred by the other party as a result). Specifically, Brannon claims that the affidavit contradicted Shalhoub's earlier deposition testimony and was not based on admissible evidence because Shalhoub stated, in the affidavit, his "beliefs" as to why terminating Brannon was the proper decision. The purported inconsistencies, which appear to clarify and not contradict, are not determinative of the decision on Luco Mop's motion for summary judgment, and thus are not genuine issues of material fact. See, e.g., Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1030-31 (8th Cir. 2000) (stating that a party may not create a "sham" issue of fact by submitting an affidavit that contradicts earlier deposition testimony, however, district court need not be concerned with contradiction if it does not relate to a genuine issue and no reasonable jury could return a verdict in the non-moving party's favor). Further, Shalhoub certainly possessed "personal knowledge" of his reasons for terminating Brannon. See Aucutt v. Six Flags Over Mid-Am., Inc., 85 F.3d 1311, 1317 (8th Cir. 1996) (district court properly considered affidavit from supervisor "because it was based on [the supervisor's] personal knowledge of the reasons underlying the challenged employment decision"). Thus, we find that the district court did not abuse its discretion in denying Brannon's motion to strike the affidavit.

B.

We review a district court's grant of summary judgment de novo, see Canady v. Wal-Mart Stores, Inc., 440 F.3d 1031, 1034 (8th Cir. 2006), and we affirm the district court's grant if the evidence, viewed in the light most favorable to the non-movant, does not show a genuine issue of material fact and the movant is entitled to judgment as a matter of law, see Samuels v. Kansas City Mo. Sch. Dist., 437 F.3d 797, 801 (8th Cir. 2006).

Brannon contends on appeal that the district court erred because it applied the burden-shifting approach of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), instead of the modified burden-shifting analysis that is applicable when the ADA claim is that an employer failed to make a reasonable accommodation. <u>Fenney v. Dakota, Minn. & E. R.R. Co.</u>, 327 F.3d 707, 712 (8th Cir. 2003). Having carefully reviewed the district court's order, it is clear that the district court recognized that the modified burden-shifting analysis is the appropriate approach to claims of reasonable accommodation and that the district court would have applied that analysis if Brannon had met her prima facie burden.

Under the modified burden-shifting approach, the employee "must first make a facial showing that he has an ADA disability and that he has suffered [an] adverse employment action. Then he must make a facial showing that he is a 'qualified individual.'" <u>Id.</u> "To be a 'qualified individual' within the meaning of the ADA, an employee must '(1) possess the requisite skill, education, experience, and training for his position, and (2) be able to perform the essential job functions, with or without reasonable accommodation.'" <u>Id.</u> (quoting <u>Heaser v. Toro Co.</u>, 247 F.3d 826, 830 (8th Cir. 2001)); <u>see also</u> <u>Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.</u>, 439 F.3d 894, 900 (8th Cir. 2006). In cases where the employee claims that he is able to perform the essential functions of the job with a reasonable accommodation, the employee "must only make a 'facial showing that a reasonable accommodation is possible.'" <u>Fenney</u>, 327 F.3d at 712 (quoting <u>Benson v. Northwest Airlines, Inc.</u>, 62 F.3d 1108, 1112 (8th Cir. 1995)). When the employee has made that facial showing, "[t]he burden then shifts to the employer to show that it is unable to accommodate the employee." <u>Id.</u> (quoting <u>Benson</u>, 62 F.3d at 1112); <u>see also</u> <u>Fjellestad v. Pizza Hut of Am., Inc.</u>, 188 F.3d 944, 951 (8th Cir. 1999) ("After [the employee] made this facial showing that reasonable accommodation was possible, the district court should then have shifted the burden to [the employer] to prove that it was unable to accommodate [the employee] through [the proposed accommodation].").

Brannon's claim fails because she does not make a prima facie showing that she was a qualified individual under the ADA. Specifically, she fails to show that her request for additional medical leave was a reasonable accommodation that would permit her to perform the essential function of regular work attendance. Brannon does not challenge the fact that she was absent from work 40 of the 77 work days preceding her termination on April 26, 2005. On that day, she submitted a "Return to Work Form" stating that she would not be able to return to work until three weeks later. This was Brannon's third "Return to Work Form" submitted since March 8 when she suffered her injury, and each form further postponed her return-to-work date.

We have previously held that regular attendance at work is an essential function of employment. See Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1048 (8th Cir. 1999) ("[I]t is axiomatic that in order for [an employee] to show that she could perform the essential functions of her job, she must show that she is at least able to show up for work."). While allowing a medical leave of absence might, in some circumstances, be a reasonable accommodation, see id. at 1049 n.3, "[a]n employer is not required by the ADA . . . to provide an unlimited absentee policy." Buckles v. First Data Res., Inc., 176 F.3d 1098, 1101 (8th Cir. 1999); see also Pickens v. Soo Line R.R. Co., 264 F.3d 773, 778 (8th Cir. 2001) (holding that plaintiff's requested accommodation of "be[ing] able to work only when he feels like working" is unreasonable as a matter of law). Futhermore, Brannon failed to demonstrate that her requested accommodation of additional time off to recuperate would have enabled her to have consistent attendance at work. See Burchett v. Target Corp., 340 F.3d 510, 517 (8th Cir. 2003) ("[T]he employee must also make a facial showing that reasonable accommodation is possible *and that the accommodation will allow her to perform the essential functions of the job*." (emphasis added)). Therefore, she failed to make a facial showing that she was a "qualified individual," and the district court properly granted summary judgment in favor of Luco Mop. See Alexander v. Northland Inn, 321 F.3d 723, 728 (8th Cir. 2003) (affirming district court's grant of summary judgment where employee failed to meet her prima facie burden of showing that a

reasonable accommodation was available that would not have placed an undue burden on the employer; recognizing that employee's post-termination request for a reasonable accommodation was "too little, too late"; and that the employer was not per se liable for failing to engage in the interactive process).

## III.

The judgment of the district court is affirmed.

_____