# IN THE COURT OF APPEALS OF IOWA

No. 16-1200
Filed June 21,2017

**MEGAN SEDLACEK,**
        Plaintiff-Appellant,

**vs.**

**THE UNIVERSITY OF IOWA and STATE BOARD OF REGENTS,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Johnson County, Marsha A. Bergan, Judge.


        Megan Sedlacek appeals from the district court order granting summary judgment in favor of the defendants on her claims of disability discrimination and retaliation. **AFFIRMED.**


        Heather L. Carlson of McDonald, Woodward & Carlson, P.C., Davenport, for appellant.

        Thomas J. Miller, Attorney General, and George A. Carroll and Tyler M. Smith (until withdrawal), Assistant Attorneys General, for appellees.


        Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

Megan Sedlacek appeals from the district court order granting summary judgment in favor of the University of Iowa[1] on her claims of disability discrimination and retaliation. She contends the district court erred in determining the undisputed facts entitle the defendants to judgment as a matter of law. Even when the facts are viewed in the light most favorable to Sedlacek, we conclude she failed to generate a genuine issue of material fact regarding whether she was a "qualified individual." Because Sedlacek failed to meet that requisite ground for her disability discrimination claim, the district court did not err in granting summary judgment in favor of the University on Sedlacek's disability discrimination claim. Similarly, the district court did not err in granting summary judgment in favor of the University on Sedlacek's retaliation claim. Accordingly, we affirm.

### I. Background Facts and Proceedings.

The University of Iowa (University) hired Sedlacek in 2006 to work as a custodian. The University's attendance guidelines sets forth the following expectations:

> Facilities Management staff are expected to maintain a regular work schedule. All staff members are expected to contribute their fair share toward accomplishing the work undertaken by the department. This is the basis on which they were initially hired and the basis upon which they are compensated. The department has work obligations and responsibilities and expects all staff members in the department to contribute in the performance of this work. Unless staff members are in attendance at work, they cannot fulfill their responsibility toward completing their fair share of the work.

---

[1] Sedlacek also named the Iowa Board of Regents as a defendant, but for simplicity, we will refer to refer to the defendants collectively as the University.

The guidelines provide that each employee's attendance is reviewed on a quarterly basis, and establish a standard of two occurrences and two days per quarter as the threshold over which additional absences may be considered excessive.[2] Each recorded absence constitutes a day of absence. The guidelines set out a system of seven steps of discipline for staff members who experience excessive absence, beginning with a counseling session as the first step and increasing to a five-day suspension as the sixth step. The seventh step of the guidelines state the staff member's employment with the University may be terminated.

A collective bargaining agreement also governed the terms of Sedlacek's employment at the University. With regard to leaves of absence without pay, the agreement states in part:

> Section 3 Leaves of Absence Without Pay
> Except as otherwise provided in this Article, employees may be granted leaves without pay at the sole discretion of the Appointing Authority for any reason for a period of up to but not exceeding one (1) year. Upon request, the leave may be extended for not more than one (1) additional year.
> . . . .
> D. Medical Leaves of Absence
> 1. Employees with at least one (1) year of seniority who have exhausted their sick leave benefits shall be granted an unpaid leave of absence not to exceed ninety (90) calendar days, provided the illness or injury exceeds ten (10) days and appropriate medical verification is submitted. Upon request of the employee, extensions may be granted for up to ninety (90) day increments not to exceed a total of one (1) year. Such leaves may not be unreasonably held.

---

[2] An "absence" is defined as any instance where a staff member is unable to work due to illness, injury, or medically related disability (excluding exemptions for FMLA leave, funeral leave, family caregiving leave, absences due to on-the-job-injuries, and any absences of less than or equal to four hours). An "occurrence" is defined as a continuous absence from work without interruption. Absence for multiple consecutive work days constitutes one occurrence.

Sedlacek received a written reprimand for excessive absenteeism on September 4, 2009, due to an unscheduled absence from work on August 7. She received a one-day unpaid disciplinary suspension on September 15 for an occurrence of unscheduled absences that occurred from August 24 through September 4 and an unscheduled absence on September 14. When Sedlacek missed work again on September 17, she received a three-day unpaid disciplinary suspension beginning September 18. Then, on September 24, Sedlacek received a five-day unpaid disciplinary suspension after an unscheduled absence on the day before.

In December 2009, Sedlacek requested leave under the Family Medical Leave Act (FMLA) to treat her depression. She provided a certification of a serious health condition from her health care provider, Dr. Elizabeth Hickman. Dr. Hickman indicated the condition commenced in late 2007 and its duration as "intermittent/lifetime." Specifically, Dr. Hickman stated Sedlacek may experience episodes of depression "0-3 times per month" with each episode lasting "1-2 days." Dr. Hickman verified that it is "medically necessary" for Sedlacek to miss work during an episode of depression because it interferes with her ability to think clearly and interact with her peers. The University approved Sedlacek for FMLA leave.

Between July and September 2010, Sedlacek had three occurrences of being unable to work, missing a total of three days of work. On October 11, 2010, she received a letter stating that she had violated the work rule for unexcused or excessive absenteeism. Sedlacek was placed on an additional

five-day unpaid disciplinary suspension and was warned that "[f]uture work rule violations or attendance issues, including further unpaid, unapproved/unscheduled absences may result in further progressive discipline, including possible suspension or termination."

On December 20, 2010, Sedlacek was absent from work again. Because she had not accrued enough sick leave or vacation leave to cover her absence, she had to use "unpaid, unapproved leave time." On December 28, 2010, the University terminated Sedlacek pursuant to its attendance policy. However, Sedlacek filed a grievance with the union, and the parties signed an agreement that led to her reinstatement in an April 2011. The agreement provides "that any absence without pay (AWOP) after the date of this agreement will constitute grounds for the immediate termination of [Sedlacek]'s employment."[3] The duration of the agreement, dated April 14, 2011, was eighteen months.

Sedlacek did not have any disciplinary issues in the year that followed. On her annual review for the period of April 22, 2011, though March 27, 2012, Sedlacek's supervisor noted "[h]er attendance for the most part has been respectable. She has not gone over the Departmental averages this past year."

On May 24, 2012, Sedlacek injured her back while emptying a wet/dry vac during her work shift. As a result, she was off of work beginning June 5, 2012. Sedlacek designated her absence as FMLA leave. On July 30, 2012, the University notified Sedlacek that she would exhaust her twelve weeks of FMLA leave on August 14, 2012. The letter sent on that date states, "This letter is to

---

[3] The agreement also specifies that "for purposes of this agreement only, AWOP does not include and absences covered by FMLA."

inform you that you will not be eligible for FMLA leave for the remainder of the calendar year." Because Sedlacek's physician indicated Sedlacek would be unable to return to work prior to the exhaustion of her FMLA leave, the letter informed her "on August 14, 2012, the paid leave used to supplement [her] income automatically will change over from FMLA sick accruals to non-FMLA sick accruals." Sedlacek had no sick leave or vacation leave accrued as of the date of the letter.

Sedlacek's treating physician released her to work four-hour shifts with a lifting restriction of twenty-five pounds beginning September 26, 2012. Her physician released her to return to eight-hour shifts with a lifting restriction of no more than thirty-five pounds beginning October 1, 2012. On October 8, 2012, Sedlacek was absent from work due to her depression. Because she had exhausted her FMLA leave and had not yet accrued enough sick leave or vacation leave to cover the full eight hours of her shift, four-and-one-half hours of her shift was marked as unpaid time. As a result, the University terminated Sedlacek on October 9, 2012 for violating the terms of the April 2011 settlement agreement.

Sedlacek filed an action alleging the University and the State Board of Regents discriminated against her based on her disability and in retaliation for engaging in statutorily-protected activity. The defendants moved for summary judgment on both claims. In a thorough, thoughtful, and well-reasoned ruling, the district court granted summary judgment in favor of the defendants. It is from that ruling that Sedlacek appeals.

**II. Scope and Standard of Review.**

The appellate courts review rulings on motions for summary judgment for correction of errors at law. *See Homan v. Branstad*, 887 N.W.2d 153, 163 (Iowa 2016). If the moving party has shown there is no genuine issue regarding any material fact, entitling the moving party to judgment as a matter of law, summary judgment is appropriate. *See id.* Therefore, our review is limited to two questions: (1) whether there is a genuine dispute regarding the existence of a material fact and (2) whether the district court correctly applied the law to the undisputed facts. *See id.* at 164.

A fact is material if it may affect the lawsuit's outcome. *See id.* There is a genuine dispute as to the existence of a fact if reasonable minds can differ as to how the factual question should be resolved. *See id.* "Even if facts are undisputed, summary judgment is not proper if reasonable minds could draw from them different inferences and reach different conclusions." *Walker Shoe Store v. Howard's Hobby Shop*, 327 N.W.2d 725, 728 (Iowa 1982).

In reviewing summary judgment rulings, we view the record in the light most favorable to the nonmoving party. *See Homan*, 887 N.W.2d at 163-64. This includes drawing all legitimate inferences that the record supports in favor of the nonmoving party. *See id.* at 164. The nonmoving party is also given the benefit of any doubt in determining whether granting summary judgment is appropriate. *See Butler v. Hoover Nature Trail, Inc.*, 530 N.W.2d 85, 88 (Iowa Ct. App. 1994).

### III. Disability Discrimination.

Sedlacek alleges the University discriminated against her with regard to her employment based on her disability. The Iowa Civil Rights Act (ICRA) prohibits discrimination in employment based on disability. *See* Iowa Code § 216.6(1)(a) (2013). To establish a prima facie case of disability discrimination, Sedlacek must show: (1) she is a person with a disability, (2) she was qualified to perform the job either with or without an accommodation for her disability, and (3) she suffered an adverse employment decision because of her disability. *See Casey's Gen. Stores, Inc. v. Blackford*, 661 N.W.2d 515, 519 (Iowa 2003). If Sedlacek fails on any one ground, her claim of disability discrimination fails. The district court found that Sedlacek's claim fails on all three grounds.

### A. Whether Sedlacek is a qualified employee.

Since it is dispositive of the disability discrimination claim issue, we begin our analysis with the "qualified individual" element of the claim. Sedlacek argues the district court erred in finding she failed to provide any evidence to show she is a qualified employee under the ICRA. A qualified employee is one who can perform the essential functions of a position with or without reasonable accommodation. *See Goodpaster v. Schwan's Home Serv.*, 849 N.W.2d 1, 14 (Iowa 2014).

The district court held that even if Sedlacek was a person with a disability under the ICRA, she could not generate a fact question as to whether she was qualified to perform her job at the University, with or without accommodation. It noted that Sedlacek admitted she had difficulty meeting the attendance requirements of the position from the time she was hired until the time she was

terminated, and cited the testimony of University representatives regarding Sedlacek's failure to meet the attendance expectations for her position. Citing *Brannon v. Luco Mop Co.*, 521 F.3d 843, 849 (8th Cir. 2008), the district court stated the obvious—that "regular attendance at work is an essential function of employment."

> In Iowa, chronic absenteeism prevents a person from performing the essential function of regularly attending work. *Falczynski* [*v. Amoco Oil Co.*]*,* 533 N.W.2d [226,] 232 [(Iowa 1995)]. Other jurisdictions agree that attendance is an essential function of most jobs. *Cf. Wimbley v. Bolger*, 642 F. Supp. 481, 485 (W.D. Tenn.1986) (one who does not come to work cannot perform any of his job functions, essential or otherwise); *Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994) (regular attendance is an essential function of a job); *Santiago v. Temple Univ.*, 739 F. Supp. 974, 979 (E.D. Pa. 1990) (an employee of any status cannot be qualified for his position if he is unable to attend the workplace, because attendance is necessarily the fundamental prerequisite to job qualification). In *Tyndall*, the United States Court of Appeals for the Fourth Circuit held:
>> An employee who does not come to work cannot perform any of [her] job functions, essential or otherwise. Therefore, a regular and reliable level of attendance is a necessary element of most jobs. . . . An employee who cannot meet the attendance requirements of the job at issue cannot be considered a "qualified" individual protected by the ADA.
>
> *Tyndall* [*v. Nat'l Educ. Ctrs. Inc. of California*], 31 F.3d [209], 213 [4th Cir. 1994)] (emphasis added) (citations omitted).
> Irregular attendance "renders a person unqualified for most types of employment and thus susceptible to legitimate termination." *Falczynski*, 533 N.W.2d at 232; *see also Kinkead v. Southwestern Bell Tel. Co.*, 49 F.3d 454, 456 (8th Cir. 1995) (excessive absenteeism qualifies as a legitimate, nondiscriminatory reason for plaintiff's termination). In *Higgins v. Iowa Department of Job Service*, 350 N.W.2d 187, 192 (Iowa 1984), we held that habitual tardiness or absenteeism, particularly after warning that termination may result if the practice continues, is grounds for one's disqualification. *Higgins*, 350 N.W.2d at 192.

*Cole v. Staff Temps*, 554 N.W.2d 699, 705 (Iowa 1996).

The district court held Sedlacek's

> proposed accommodation, i.e., that she should have been permitted to work less, despite the fact that from 2006 to 2012, [Sedlacek] missed all or part of 356 work days, or around five work days per month simply is not an accommodation that would allow [her] to perform the essential functions of the job, either before or at the time of her termination. As the *Brannon* Court has pointed out, regular attendance at work is an essential function of employment, and the U of I Custodian I position required regular attendance as part of the job requirements. [Sedlacek] was given multiple opportunities to improve her attendance numbers, and she remained unable to establish a reliable and regular attendance pattern. When [Sedlacek] missed work so often, it affected the working requirements and environment of the other custodians in the group in which [she] worked. [Sedlacek] cannot show that a reasonable accommodation was possible, or that the accommodation would have allowed [her] to perform the essential functions of the job.

*Brannon* involved a disability-discrimination claim arising from an employee's termination after an extended absence from work due to toe surgery. 521 F.3d at 845. The employee informed her employer on March 16, 2005, that she expected return to work on April 18. *Id.* On April 12, the employee provided her employer with a new return-to-work date of April 26. *Id.* Then, on April 26, she informed her employer she would be returning to work on May 23. *Id.* The employer terminated the employee on April 26 due to her extended absences and deficient work quality, citing the strain it caused on the employer's ability to meet its production requirements. *Id.* In affirming the district court's grant of summary judgment in favor of the employer, the Eighth Circuit found that the employee failed to "to show that her request for additional medical leave was a reasonable accommodation that would permit her to perform the essential function of regular work attendance." *Id.* at 848. The court noted that the ADA does not require employers to allow their employees unlimited absences and that

the employee failed to show that receiving additional time off would have enabled her to have consistent attendance at work. *Id.* at 849.[4]

*Brannon* does not hold that an absence is never a reasonable accommodation, however. Although the court held an employee's open-ended absence was not a reasonable accommodation under the facts of that case, it noted that "allowing a medical leave of absence might, in some circumstances, be a reasonable accommodation." *Id.*; *see also Hudson v. MCI Telecommc'ns Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996) (stating that "a reasonable allowance of time for medical care and treatment may, in appropriate circumstances, constitute a reasonable accommodation"). The question turns on the expected duration of the employee's impairment. *See Cisneros v. Wilson*, 226 F.3d 1113, 1130 (10th Cir. 2000), *overruled on other grounds by Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001). As the *Cisneros* court explained, an accommodation is reasonable if it allows an employee to perform the essential functions of the job at the present or in the *near future*. *See id.* at 1129. A request for indefinite leave cannot constitute "reasonable" accommodation because it does not allow the employee to perform the essential functions of the job in the near future. *See id.* Likewise, a request for indefinite leave prevents an employer from determining whether the employee will be able to perform the essential functions of the job in the near future and, accordingly, whether the accommodation is reasonable. *See id.* at 1130. For that reason, an employee

---

[4] Because the IRCA and the ADA have common purposes of prohibiting disability discrimination and share similar terminology, the Iowa Supreme Court has "look[ed] to the ADA and underlying federal regulations in developing standards under the IRCA for disability discrimination claims." *See Bearshield v. John Morrell & Co.*, 570 N.W.2d 915, 919 (Iowa 1997).

who fails to provide any evidence regarding the expected duration of impairment fails to create a triable issue of fact regarding the reasonableness of the requested leave. *See id.*

The evidence shows that Sedlacek was able to perform the essential duties of her job when she was not experiencing an episode of depression. When experiencing a flare-up, Dr. Hickman noted that Sedlacek would be unable to perform the essential functions of her job for a period of one to two days. Afterward, Sedlacek was able to return to work and perform the essential functions of her position. Because Sedlacek's requested accommodation is in reality a request for open-ended intermittent absences for an indefinite period of time, the requested accommodation is not reasonable. Sedlacek has failed to generate a fact question as to whether she could perform the essential functions of her position with or without reasonable accommodation. The district court correctly ruled that, as a matter of law, Sedlacek's requested accommodations would not render her "qualified."

## IV. Retaliation.

Sedlacek alleges the University discharged her in retaliation for her engaging in protected activities—her requesting reasonable accommodations for her disability and requesting that the University engage in an interactive process to determine reasonable accommodations. The ICRA also prohibits "retaliat[ing] against another person in any of the rights protected against discrimination by this chapter because such person has lawfully opposed any practice forbidden under this chapter." Iowa Code § 216.11(2). To establish a prima facie case of retaliation under the ICRA, Sedlacek must show she was engaged in a statutorily

protected activity, the University took adverse employment action against her, and a causal connection between her participation in the protected activity and the adverse employment action. *See Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 750 (Iowa 2006). Sedlacek alleges the adverse employment action was her termination and the protected activity she participated in was requesting accommodation for her disability. Once a prima facie case has been established, the burden shifts to the University to rebut a presumption of retaliation. *See Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 678 (Iowa 2004).

Sedlacek provided the University with a doctor's certification that her disability prevented her from working one to two days during flare-ups, which could occur up to three times per month. After a workers' compensation injury exhausted Sedlacek's FMLA leave, she requested additional leave or unpaid time off to accommodate her disability. Janet Gorman, who provides the University with guidance and direction on disability matters related to employment and the accommodation process, testified that when employees need more leave from work than their vacation leave and sick leave accruals allow, "they can apply for an unpaid leave of absence, and the unpaid leave of absence is considered to be an accommodation by the department or the employer to allow someone to recover and return to work." Sedlacek requested that the University apply four-and-one-half hours of unpaid leave to her absence on October 8, but her request was denied. Gorman explained that whether unpaid leave is a reasonable accommodation depends on "how much time does an employee need to be absent in order to recover and return to work regularly and consistently," but in her opinion, "it is not reasonable to [provide employees

with] intermittent unpaid leave." The University opted to terminate her employment.

In granting summary judgment in favor of the University on Sedlacek's retaliation claim, the district court found:

> Even when the facts are viewed in the light most favorable to [Sedlacek], she simply cannot show any evidence of an adverse employment action taken by [the University] against [her] that is causally connected to [her] right to participation in a protected activity. [The University] took every reasonable step to make [Sedlacek]'s employment as a Custodian I work out for [Sedlacek], and [Sedlacek]'s inability to meet the attendance requirements of the position was the basis for the termination. There is no evidence in the record to support a finding of retaliatory action on the part of [the University] against [Sedlacek].

We agree as the record supports the district court's conclusion. Sedlacek has failed to generate an issue of material fact as to whether her termination was in retaliation for her engaging in protected activities.

The district court made no error in granting summary judgment in favor of the University regarding Sedlacek's retaliation claim.

**AFFIRMED.**